## BARNETT vs. THE STATE.

In proceeding, under the statute, against the reputed father of a bastard child, it is not necessary that there should be other pleading than the mere denial of the defendant to authorize the Circuit Court to submit the matter, whether he is the father or not, to a trial by jury.

And in such proceedings the defendant should not be allowed, on cross-examination of the mother of the child, a witness for the State, to ask her as to the number of times, the place where, the time of day when, he had connection with her, or the mode of meeting for such purpose, unless such questions be confined to some definite time within which the child might have been begotten.

But the defendant may well ask the witness in such case: how do you know that the defendant is the father of the child?

*Appeal from the Circuit Court of Union County.*

Hon. THOMAS HUBBARD, Circuit Court.

QUILLIN, for the appellant.

JORDAN, Attorney General, contra.

Mr. Justice SCOTT delivered the opinion of the Court.

This was a proceeding under the Bastardy Act (*chap.* 24, *Dig., p.* 210) commenced before a justice of the peace of Union county, and taken by the appeal of Barnett to the Circuit Court of that county, where, after an unsuccessful motion on his part to quash the proceedings, the issue, whether or not he was the father of the child in question, was submitted to a jury, who found the verdict against him, upon which the court rendered judgment and made the usual consequent final orders, and Barnett appealed to this court.

From the bill of exceptions it appears that the mother of the al-

leged bastard, was the only witness introduced on the trial of this issue. She swore that she was a white woman; that she had never been married; that on the 13th of July, 1854, she was delivered of a girl child in said county of Union; that the child was still living, and that the defendant below was the father of the aforesaid child. The State here announcing that the evidence on her part was closed, the defendant proposed to ask the same witness the following questions:

1st. How many times did the defendant have connexion with you—if more than once say so?

2d. Did he and you meet out accidentally, or by agreement —or meet out at all?

3d. Where did he have connexion with you—give one place?

4th. What time did the connexion take place—in the day or night?

5th. How do you know the defendant is the father of the child?

The State objected to all these questions, and they were ruled out, and Barnett excepted.

He afterwards moved in arrest of judgment and for a new trial, upon the ground that the complaint and warrant were not sufficiently certain, and, therefore, the court ought to have granted the motion to quash; that there was no regular issue formed by the pleadings, and the jury were not sworn to try any such; because the court ruled out the questions, above copied, that were proposed by him to be profounded to the witness; and because, the verdict was contrary to law and evidence.

Both motions were overruled, and he took his bill of exceptions, setting out the whole proceedings and evidence in the cause, the whole of which we have already copied.

The complaint and the warrant are as certain as the statute; and the proceedings before the justice, were in strict conformity with its provisions. The statute does not require more than a mere denial, that the defendant is the father of the alleged bastard, to authorize the Circuit Court, without any formal pleading,

to submit that matter to the trial of a jury, (*Dig., chap.* 24, *sec.* 18), and the record shows that the jury "were duly elected, empanneled and sworn in the case."

Under the statute (*sec.* 22,) the mother of the alleged bastard was a competent witness upon the trial of the matter submitted to the jury, and the defendant had a clear right to cross-examine her, and to invalidate her testimony, if he could, according to the general rules of law in reference to cross-examination, and to the issue, and to what was involved in it. To have made the first four questions relevant to the issue, they should have been limited to a period of time in which it was probable the child in question was begotten. In the terms in which they were proposed, they were too latitudinous *as to time,* to be relevant to the issue. The evidence, as to its relevancy, should be confined within the period of time, when according to the course of nature, the child in question could have been begotten *Walker vs. The State,* 6 *Blackf. Rep.* 1.

The fifth question, however, was clearly proper to be answered by the witness. She having sworn that the defendant was the father of the child, he had the right to interrogate her as to the grounds of her knowledge as to this. The very point in issue, and the only point, was whether or not the defendant was the father of the child. And as in most cases it would be utterly impossible for the party charged to prove negatively, that he was not the father, he would be deprived of the only means possible to falsify the charge against him, if he should not be permitted to cross-examine the witness as to the ground of her knowledge, or to show that another person was the father of the child, or might have been, and thus make it probable that the witness was mistaken. Nor would evidence of the latter class be incompetent because of its indecency and of its affecting the feelings of third persons, because it is directly relevant to the issue to be tried, which involves a civil right. And for the same reason it could not be objectionable on account of its tending to cast discredit upon the testimony of the witness : because, although it is the gene-

ral rule that you can only attack the general character of a witness, and cannot show particular discreditable acts for this purpose, on the ground that every one is supposed capable of supporting a general character, but is not prepared to answer as to any particular matter without notice ; yet here, so far as the general character and behavior of the witness are brought in question by the proof of such acts, it is not incidentally and collaterally done so, as is generally the case with respect to witnesses, but is directly involved in, and material to the issue to be tried. (See the opinions of both BROOKE and ROANE, as to this point, in the case of *Fall vs. The Overseers of Augusta*, 3 *Munf. Va. Rep.*, *p.* 502, 504, 505.)

We think, therefore, that the court erred in ruling out this question, and on this ground the appellant ought to have been granted a new trial. The judgment of the court will conseqently be reversed, and the consequent orders set aside, and the cause will be remanded to be proceeded with to another trial and judgment.