## KENNEDY *v.* STATE.

### Opinion delivered February 15, 1915.

1. BASTARDY—MOTHER AS WITNESS.—Under Kirby's Digest, § 492, the mother is a competent witness in all cases of bastardy, unless she be legally incompetent in any case.

2. BASTARDY—MOTHER AS WITNESS—CORROBORATION.—In a bastardy case, where the mother is a witness (although she is married to another man), it is not necessary that she be corroborated, and she may testify to any fact tending to prove the illegitimacy of the child, except the single fact of nonaccess of her husband.

3. LEGITIMACY—WEDLOCK—PRESUMPTION.—Where a child is born in wedlock it is presumed to be legitimate.

4.　Bastardy—testimony of wife—nonaccess of husband.—In bastardy proceedings, in the absence of a statute in express words making the mother competent to testify to the nonaccess of her husband, she will be held incompetent to do so.

5.　Bastardy—presumption.—In a bastardy proceeding, the presumption of the legitimacy of the child will not be overcome where the mother, although testifying that the accused was the father of the child, stated that her husband was living, but did not testify to any fact which would tend to prove nonaccess on his part within the period of gestation, and where there is no other evidence tending to prove nonaccess of the husband.

Appeal from Sevier Circuit Court; *Jefferson T. Cowling,* Judge; reversed.

*W. H. Collins* and *Pole McPhetrige,* for appellant.

Our statutes do not in terms define who are to be considered bastards, but at the common law, which prevails in this State except where altered by statute, they are defined to be children born out of wedlock. Kirby's Dig., chap. 13; 2 Greenleaf on Evidence, Redfield's Ed., § § 150, 151, and marginal notes. See, also, 1 Bouvier's Law Dict., Rawl's Revision; 2 Kent, § 151. A child born in wedlock is presumed to be legitimate. 6 How. 550; 115 Fed. 124.

Husband and wife are alike incompetent to prove nonaccess of the husband while they lived together. 4 Jones, Com. on Evidence, 406, 407.

Where marriage is proved, nothing short of proof of facts showing it to be impossible that the husband could be the father, can suffice to show illegitimacy of the issue. 6 How. 550; 24 How. 563-609.

No brief filed for appellee.

Wood, J. The question presented by this appeal is whether or not a verdict finding appellant to be the father of a child in bastardy proceedings is sustained by the testimony alone of the mother of the child, to the effect that the appellant had sexual intercourse with her on the 10th of September; that she discovered that she was pregnant about the middle of October, and that appellant was the father of the child, the witness stating also that at that time she had a living husband.

(1-2)   Under our statute the mother is a competent witness in all cases of bastardy unless she be legally incompetent in any case.   Kirby's Digest, § 492; *Barnett v. State,* 16 Ark. 530.   It is not necessary that her testimony be corroborated.   *Qualls* v. *State,* 92 Ark. 200.   She may testify to any fact tending to prove the illegitimacy of the child except the single fact of nonaccess of her husband.

In 1734 Lord Hardwicke, in *R.* v. *Reading,* Lee, T. Hardwicke, 79, announced the rule that in affiliation proceedings the bastardy of a child could not be established upon the sole and uncorroborated testimony of the mother of such child as to nonaccess of her husband.   This rule prevailed in England down to 1777, when Lord Mansfield, in *Goodright* v. *Moss,* 2 Cowp. 591, declared as follows: "It is a rule founded in decency, morality and policy that they" (husband and wife) "shall not be permitted to say, after marriage, that they have had no connection and that therefore the offspring is spurious."

The weight of authority in this country at the present time is in favor of the doctrine announced by Lord Mansfield, and it is now generally held that, in the absence of a statute authorizing a married woman to testify as to the fact of nonaccess of her husband, she is incompetent to testify to that single fact in an affiliation or bastardy proceeding.   3 Ruling Case Law, § 11, p. 731; 6 Am. & Eng. Ann. Cas. 816, note.

In *Tioga County* v. *South Creek Township,* 75 Pa. St. 433, the court said:   "Many reasons have been given for this rule, prominent among them is the idea that the admission of such testimony would be unseemly and scandalous, and this is not so much that it reveals immoral conduct upon the part of the parents, as because of the effect it may have upon the child who is in no fault but who must nevertheless be the chief sufferer thereby. * * * That the parents should be permitted to bastardize the child is a proposition which shocks our sense of right and decency, and hence the rule which forbids it."

There are respectable authorities holding that under statutes making the mother a competent witness in bastardy proceedings, she may testify to the nonaccess of her husband. See *Pleasant Evans* v. *State* ex rel. *Irene Freeman,* 165 Ind. 369; also, *State* v. *McDowell,* 101 N. C. 734. But we are in full accord with the doctrine that, on the ground of decency and morality and as a matter of public policy, a husband and wife should not be permitted to testify to nonaccess in affiliation proceedings. For when they so testify they proclaim their own lechery and their infidelity to each other and reveal secrets that are so purely delicate and personal as to make it grossly indecent to advertise them to the world. By so doing they not only scandalize the sacred marital relation, but they cast a cloud upon the life of the unoffending child, and subject it to handicaps and embarrassments that are always most hurtful and most difficult to overcome. In the interest of society and for the benefit of the innocent offspring, this should never be permitted.

(3) These are doubtless the reasons out of which grew the presumption that a child born in wedlock is legitimate. This presumption had its origin in remote times and for ages was deemed conclusive.

"It was a maxim of the Roman law, and one which the common law copied, that the presumption is that he is the father whom the marriage indicates, and Montiesquie, alluding to it, observed that 'the wickedness of mankind makes it necessary for the law to suppose them better than they really are. Thus we judge that every child conceived in wedlock is legitimate, the law having a confidence in the mother as if she were chastity itself.' * * * The early common law in England was that if the wife had issue while her husband was within the four seas, that is, within the jurisdiction of the King of England, such issue was conclusively presumed to be legitimate, except upon proof of the husband's impotency; and even if he was beyond the four seas, he must have been away for so long a period before the birth of the child as to

make it a natural impossibility that he could be the father." 3 R. C. L., § 6, p. 726.

This rule, however, was gradually relaxed in England, and now the rule there, as well as in this country, is that the presumption of legitimacy "may be wholly removed by proper and sufficient evidence showing that the husband was impotent, entirely absent so as to have had no intercourse or connection of any kind with the mother, entirely absent at the period in which the child must, in the course of nature, have been begotten, or present only under such circumstances as to afford clear and satisfactory proof that there was no sexual intercourse." 3 R. C. L., § 7, p. 727.

(4) In the absence of a statute in express words making the mother competent to testify to the nonaccess of her husband, we hold that she can not do so. Under our statute, as we have seen, the mother is a competent witness. She may testify to facts which tend to prove that access on the part of her husband within the period of gestation was impossible, and if she testified to facts of that character there would be a question for the court or jury trying the issue to determine as to whether or not the presumption of legitimacy had been overcome. But, in this case, there is no such testimony. She does not testify to any fact that would warrant the conclusion that her husband did not have access within the period of gestation.

Mr. Chamberlayne, in his work on Evidence, in speaking of the matters by which the presumption of legitimacy may be rebutted, says: "Impossibility of procreation must, however, be established, in order to justify the affirmative action of the court. Even a high degree of improbability is not sufficient for the purpose of bastardizing the offspring. * * * The question in each case is, of course, as to actual access on the part of the husband. That fact being proved or disproved, the judicial inquiry, as a rule, ceases. 2 Modern Law of Evidence, p. 1340, § 1089.

(5)　In this case the mother testified that appellant had sexual intercourse with her and was the father of the child; but she also states that her husband was living, and does not testify to any fact that would tend to prove nonaccess on his part within the period of gestation, and there is no other evidence tending to prove nonaccess of the husband.　Therefore, the presumption of legitimacy has not been overcome, and the evidence is not legally sufficient to sustain the verdict.　The judgment is therefore reversed and the cause remanded for a new trial.