Floyd SPRATLIN and SOUTHERN FARM BUREAU *v.* Lillie T. EVANS, Alleged Widow, and Dian Cohns, et al., Alleged Dependent Children of Hosea EVANS, also known as Hosea Evans STOKES, Deceased

76-11                                                                538 S.W. 2d 527

Opinion delivered June 28, 1976

50

*Daggett, Daggett & Van Dover,* by: *Jesse B. Daggett,* for appellants.

*Brick, Wallin & Rainey,* by: *Jake Brick,* for appellees.

J. Fred Jones, Justice. This is a workmen's compensation case in which the appellant-employer, Floyd Spratlin, and the appellant-compensation carrier, Southern Farm Bureau, appeal from a circuit court judgment affirming the Commission's award of compensation benefits to Dian Cohns, Wilma Jean Cohns and Larry D. Cohns as acknowledged and dependent illegitimate children of the decedent-employee, Hosea Evans Stokes, and in reversing the Commission's finding that Lillie Tarpley Evans was not the widow of the decedent, and in ruling to the contrary as to the widow.

The appellants have designated the points they rely on for reversal as follows:

The circuit court erred as a matter of law in its ruling that Lillie Tarpley Evans was the "widow" of Hosea Evans Stokes as that term applies to the Workmen's Compensation Act.

The award of benefits to Dian Cohns, Larry Donnel Cohns and Wilma Jean Cohns was procured by fraud, is based upon perjured testimony and is not supported by substantial evidence.

The pertinent facts as reflected by the testimony may be stated as follows: The decedent-employee, Hosea Evans Stokes, also known as Hosea Evans, sustained a compensable accident resulting in his death on June 12, 1972. Lillie Tarpley Evans filed workmen's compensation claim for death benefits for herself as widow and Leona Cohns filed claim for the statutory funeral allowance and for compensation benefits for her minor children already mentioned.

The Administrative Law Judge found that Lillie Tarpley Evans was the widow of the decedent as defined by the

Workmen's Compensation Act; that the aforementioned minor children were acknowledged illegitimate children of the decedent and entitled to benefits under the Act. On review by the full Commission, the Commission found that Lillie Tarpley Evans was not the widow of the decedent within the meaning of the Compensation Act, but found that the aforenamed children were the acknowledged illegitimate children of the decedent and were wholly dependent on him at the time of his death and were entitled to benefits under the Act. The circuit court, upon appeal, reversed as to the widow and held that Lillie Tarpley Evans was the widow of the decedent within the meaning of the Act and affirmed the Commission as to the aforesaid minor children.

Leona Cohns testified that she is the mother of the children here involved, and in addition she has seven other children. She said she was originally married to L. C. Cohns; that they were never divorced but that she had not lived with him for 18 years and that he died in 1965. She said she had lived with the decedent for about 18 years and was living with him at the time of his death in 1972. She said she had four children by the decedent including Dian, Wilma and Larry, the children here involved, as well as a fourth child Sandra Kay, who was adopted at eight months of age by her sister in Memphis, Tennessee. She said Dian, Wilma and Larry lived in the house with her and decedent; that Dian was born on July 13, 1956; Wilma on July 8, 1957, and Larry on October 15, 1959. She admitted that the delayed birth certificates of these children showed their father to be L. C. Cohns, and that this information was given to the registrar of birth certificates by her under affidavit. She said, however, that the doctor delivering the children suggested that she give the true name of her legal husband as the father of the children since she was still legally married to him, and that she simply followed the doctor's advice. The delayed birth certificates placed in evidence showed the one for Dian was applied for and issued in August, 1962; the one for Larry was applied for and issued in June, 1968; and the one for Wilma was applied for and issued in September, 1963.

Lillie Tarpley Evans testified that she was 79 years of age and lives in Memphis, Tennessee; that she married the decedent in 1935 and lived with him as husband and wife until 1957 when they concluded that they could no longer live

together. She said she never did obtain a divorce. She said that from 1957 until the decedent's death he never did support her but that her daughter supported her. She said she had not lived with the decedent for 18 years; that she was not dependent upon him for support; that he made no contribution toward her support since they separated in 1957; that she was able to take care of herself with the assistance of her daughter.

The testimony of all the witnesses is not abstracted but appellee Lillie Tarpley Evans' own testimony is substantial evidence that she and the decedent separated by mutual consent and had not lived together since 1957, and that she was not dependent upon him for her support during the intervening period between their separation and his death. If Lillie's testimony was correct as to the date she and the decedent separated, and Leona's testimony was correct as to the approximate 18 years she lived with the decedent and as to the birth dates of her children, then it is obvious that Leona started living with the decedent, and at least Dian was born, before he and Lillie separated.

Leona's testimony leaves much to be desired in attempting to establish the decedent as the father of the children here involved in the face of her affidavit to the contrary in her applications for the delayed birth certificates. There is substantial evidence, however, that Leona and her children here involved, lived with and were supported by the decedent.

We now come to the law in Arkansas as it applies to the evidence in this case. The rights of a dependent lawful widow and dependent legitimate children are not questioned or involved in this case. Consequently, our decision as to the rights of the claimants who are involved must depend, to a large extent, on statutory definitions. We shall first consider the claim of the appellee Lillie Tarpley Evans.

Ark. Stat. Ann. § 81-1315 (c) (Repl. 1960) provides as follows:

Subject to the limitations as set out in section 10 [§ 81-1310] of this act, compensation for the death of an employee shall be paid to those persons who are wholly dependent upon him in the following percentage of the

average weekly wage of the employee, and in the following order of preference.

First. To the widow if there is no child, thirty-five (35) per centum, and such compensation shall be paid until her death or remarriage.
To the widower if there is no child, thirty-five (35) per centum, and such compensation shall be paid during the continuance of his incapacity or until remarriage.

Second. To the widow or widower if there is a child, the compensation payable under the First above, and fifteen (15) per centum on account of each child.

Third. To one child, if there is no widow or widower, fifty (50) per centum. If more than one child, and there is no widow or widower, fifteen (15) per centum for each child, and in addition thereto, thirty-five (35) per centum to the children as a class, to be divided equally among them.

Fourth. To the parents, twenty-five (25) per centum each.

Fifth. To brothers, sisters, grandchildren and grandparents, fifteen (15%) per centum each.

Section 81-1302 (1) defines widow as follows:

"Widow" shall include only the decedent's legal wife, living with or dependent for support upon him at the time of his death.

This language is clear and unambiguous. It disposes of Lillie's claim under her own testimony, given with commendable candor, as already set out. We are not unmindful of our decision in *Chicago Mill & Lbr. Co.* v. *Smith,* 228 Ark. 876, 310 S.W. 2d 803 (1958). The claimant in that case, as in the case at bar, was a "legal wife" at the time of the decedent's death. The Commission denied the widow's claim on the theory that she was not a dependent within the meaning of the Act. The circuit court affirmed the Commission and we reversed, not on the ground that the widow was dependent as a matter of law simply because she was the decedent's legal wife at the

time of his death, we reversed because there was no substantial evidence to support the Commission's finding that she was not dependent on the decedent at the time of his death. The evidence pertaining to dependency in *Smith* is not set out in our opinion and it is not now available to us for discussion.

Certainly we do not now say that a widow who was not living with her husband at the time of his death may nevertheless be dependent upon him for support and entitled to compensation benefits as his widow under the Act. We do say, however, that such dependency is a matter of proof and there was no proof of such dependency in the case at bar. As already pointed out, the proof was to the contrary. The Commission was right in denying the claim of the appellee Lillie Tarpley Evans, and the circuit court erred in reversing the Commission as to her claim.

We now consider the more difficult claim of the children. We are met at the threshold in this connection with the common law presumption, long valid in this state, that a child born to a legally married woman is the legitimate child of the husband and the presumption is one of the strongest presumptions known to the law. It is only rebuttable by the strongest type of evidence such as conclusive evidence of impotency of the husband, or nonaccess between the parties at the time of conception. The moral and social reasons for retaining this common law presumption in domestic relations and in the property laws relating to descent and distribution are too obvious and well known to justify comment, and our decisions on this point are so numerous and uniform we deem it unnecessary to cite them. Larson, in his work on compensation law, devotes § 62-22 to "Inroads into Common-Law Tests: Legitimacy," and points out some of the inroads by judicial decision but primarily by statutory enactment.

We deem it generally accepted that one of the primary reasons for workmen's compensation law is to protect the injured employee, or his dependents in case of death, from becoming public charges dependent upon charity rather than on remuneration from the industry responsible for the loss, and to spread the loss more evenly throughout industry.[1]

[1]See *J. J. Murphy & Son, Inc.* v. *Gibb*, 137 So. 2d 553; *Thuillez* v. *Yellow Transit Freight Lines*, 358 P. 2d 676; *Kotarske* v. *Aetna Cas. & Sur. Co.*, 244 F. Supp. 547; *Crilly* v. *Ballou*, 91 N.W. 2d 493; *Hubbard* v. *Midland Contractors*,

With this broad purpose in mind we now examine our statutory provision pertaining to the children involved in the case at bar.

Ark. Stat. Ann. § 81-1302 (j) (Repl. 1960) reads as follows:

"Child" means a natural child, a posthumous child, a child legally adopted prior to injury of the employee, a step-child, an acknowledged illegitimate child of the deceased or spouse of the deceased, and a foster child. "Child" shall not include married children, unless wholly dependent upon the deceased.

Thus, it is clear that acknowledged illigetimate children of a deceased employee or the spouse of the deceased employee are also entitled to compensation benefits under § 81-1302 (j), supra.

Ordinarily, in workmen's compensation cases on appeal to this court, we are only concerned with whether there was any substantial evidence to sustain the Commission's findings or award. But in the case at bar the Commission found that the children here involved were the acknowledged illegitimate children of the decedent wholly dependent upon him at the time of his death and were, therefore, entitled to compensation benefits. The question before us on this appeal, therefore, goes beyond the mere question of whether there was substantial evidence to support the Commission's findings. The paramount question now before us in the case at bar is whether there was sufficient competent evidence to overcome the presumption against the illegitimacy of the children here involved and we conclude there was not.

The case at bar is easily distinguishable from Stephens & Stephens and Rockwood Ins. Co. v. Logan, 260 Ark. 78, 538 S.W. 2d 516, which is also being decided today. The quantity and quality of the rebutting evidence in Logan was much clearer, stronger and convincing than that offered

Inc., 131 N.W. 2d 209; Smith v. Home Bldg. Contractors, Inc., 363 S.W. 2d 11; Mahlum v. Broeder, 412 P. 2d 572; Ricciardi v. Damar Products Co., 211 A. 2d 347; Stellmah v. Hunterdon Coop. G.L.F. Service, Inc., 219 A. 2d 616; Cates v. Hunt Const. Co., 148 S.E. 2d 604; Newell v. Taylor, 321 P. 2d 294; Jussila v. Dept. of Labor and Industries, 370 P. 2d 582.

in the case at bar. The evidence of illegitimacy in the case at bar consisted solely of the testimony of the children's mother that the decedent, and not her husband, was the father of the children here involved. Her sworn affidavits to the contrary in obtaining delayed birth certificates certainly add nothing to the verity of her testimony. It might well appear that the drafters of our Compensation Act recognized the problems likely to arise in relation to innocent children wholly dependent on a deceased employee at the time of his death and for that reason spelled out in considerable detail exactly who is and who is not a "child" within the meaning of the Act.

This case was submitted to the Commission and decided on the single theory that the claimant-children were the acknowledged illegitimate children of the decedent wholly dependent upon him at the time of his death. The Commission apparently did not consider any of the other definitions of "child" under the Act. We hold that the evidence submitted was not sufficient to overcome the presumption against the illegitimacy of the children in this case and that the judgment of the trial court must be reversed as to the widow and as to the children also. As we have already stated, it is apparent that the claims of the children were presented to, and considered by, the Commission solely as claims of acknowledged illegitimate children of the decedent. It is entirely possible that the Commission would have reached the same results had the claims been considered as claims filed on behalf of foster children, or one of the other definitions for "child" set out in the Act. We conclude that the Commission should have the opportunity of reviewing the evidence in the light of all the definitions of "child" under the Act, and that this case should be remanded to the Commission for that purpose.

The judgment is reversed and the cause dismissed as to the widow. The judgment is reversed as to the children and this cause remanded to the circuit court of Arkansas County with directions to remand to the Commission for such further action pertaining to the claims of the children as the Commission deems necessary not inconsistent with this opinion.

The judgment is reversed and the cause remanded.