STEPHENS & STEPHENS and
ROCKWOOD INSURANCE CO. *v.*
Emma LOGAN et al, Appellees And
Henry Lee DUNN Jr., Cross-Appellant

75-333                                    538 S.W. 2d 516

Opinion delivered June 28, 1976
[Rehearing denied July 19, 1976.]

*Shackleford, Shackleford & Phillips,* for appellants.

*William E. Johnson,* for appellee and cross-appellant; *Henry Lee Dunn, Arnold, Hamilton & Streetman,* for appellees Rochelle and Blankenship; *Switzer, Switzer & Draper,* for Linda Carol and Davis Christy.

Frank Holt, Justice. This is a workmen's compensation case. In October, 1973, Eddie Lee Jackson, Oscar Logan and Elbert Davis were passengers in a pickup truck owned and driven by their employer Rogers Blankenship. Rogers had picked the three men up at their homes and they were on their way to a pulpwood cutting work site when the pickup truck collided with a school bus causing the immediate death of all four men. Rogers had purchased his father's pulpwood business and was supplying pulpwood to Georgia-Pacific through the account of appellant Stephens and Stephens. It is undisputed that at the time of the accident appellant Stephens had workmen's compensation insurance with appellant Rockwood. Numerous claims by the alleged dependents of the decedents were filed with the Arkansas Workmen's Compensation Commission against appellants.[1]

---

[1]The Commission's award to the dependents of Eddie Lee Jackson is not a part of this appeal.

At the request of Rockwood, W.R. Blankenship, father of deceased Rogers Blankenship, and his workmen's compensation insurance carrier, Hartford Insurance Company, were made parties respondent to the claims.

The Commission found that the appellant Rockwood was estopped to deny that it extended workmen's compensation coverage to Rogers Blankenship; Rogers Blankenship was an uninsured subcontractor of Stephens; and all the decedents were statutory employees of Stephens. The Commission also found that Rochelle Blankenship is the widow of Rogers Blankenship and Christie Joy Blankenship is his daughter, who are entitled to benefits; Emma Logan and Christie Lee Davis are not widows within the meaning and definition of the Workmen's Compensation Act and, therefore, are not entitled to benefits; Elbert Davis is survived by his acknowledged, illegitimate daughter, Linda Carol Davis, who is entitled to benefits; and Henry Lee Dunn, Jr., is not the child of Elbert Davis. The Commission further found that none of the claims were barred by the coming and going rule and Hartford Insurance Company had no policy in effect with W.R. Blankenship that extended coverage to the families of any of the decedents.

The circuit court affirmed the Commission's findings except it reversed the Commission's findings that Emma Logan is not the widow of Oscar Logan and Christie Lee Davis is not the widow of Elbert Davis. From this order comes this appeal. Henry Lee Dunn, Jr., cross-appeals from the court's order affirming the Commission's finding that he is not the dependent child of Elbert Davis.

We first consider appellants' contention that there is no substantial evidence to support the Commission's finding that appellees' decedents were not employees of W.R. Blankenship. We do not agree. Appellants recognize that the finding of the Workmen's Compensation Commission will be affirmed if there is substantial evidence to support it. We further observe that in determining if there is substantial evidence to support the factfinder, we need only ascertain that evidence, although contradicted, which is most favorable to the appellee. *Thrifty Rent-A-Car* v. *Jeffrey,* 257 Ark. 904, 520 S.W. 2d 304 (1975). In the present case there is testimony by Rogers Blankenship's father and his wife that Rogers had

bought the pulpwood operation from his father in February, 1973, under a rental purchase agreement. By the terms of the agreement, he was paying his father $200 a week on the equipment until a total of $30,000 was paid. Rogers applied for and got a Federal Employer's Identification Number in July, 1973, and began making his own payroll. He hired, fired and supervised the employees in his pulpwood operation. He had employed all three of the individuals who were killed in the truck with him. Edgar Stephens, sole owner of appellant Stephens & Stephens, testified that Rogers Blankenship was one of his pulpwood subcontractors. Stephens stated he knew that Rogers had bought or was buying this equipment from his father because Rogers' mother had so told him (Stephens) about a month before the accident. There is ample substantial evidence that Rogers Blankenship was not his father's employee and at the time of the fatal accident was the employer of the three men who were killed in the truck with him.

Appellants assert that the Commission's finding that they are estopped to deny coverage is not supported by substantial evidence. Appellants argue it is not relevant that Rockwood had consistently paid claims on subcontractors knowing they were subcontractors. We cannot agree.

We deem it necessary to discuss some background facts concerning the pulpwood industry in Ashley County. For at least the last ten years, Georgia-Pacific has purchased pulpwood from only two sources in Ashley County, appellant Stephens and another individual, Marcel Baker. Each was assigned a zone of operation in the county and sometimes a quota. Their subcontractors (such as Blankenship) would cut and deliver pulpwood directly to the Georgia-Pacific mill; however, payment was made either to appellant Stephens or Baker, as the case may be. When Georgia-Pacific paid either appellant Stephens or Baker, it withheld premiums for workmen's compensation insurance from the remuneration due the dealers based on the cords of wood delivered by the subcontractors. Georgia-Pacific would then pay these premiums directly to the Guy Nolley Agency, agent for appellant Rockwood. The dealer would then deduct the premium when he paid the subcontractor. It was estimated that the annual premium for workmen's compensation coverage for forty-two contractors-producers was $215,000.

W. R. Blankenship, Rogers' father, testified that in 1970 he made a verbal contract with appellant Stephens to cut and haul pulpwood to Georgia-Pacific through the Stephens' account. At the time of the initial agreement, Stephens advised him that he would pay him once a week for the wood produced and that workmen's compensation insurance would be deducted from the pay he received. Stephens told him that anyone who worked in connection with the cutting, hauling or loading of the pulpwood was covered under his (Stephens') policy of workmen's compensation insurance. When Blankenship sold the equipment to his son Rogers, he told his son that workmen's compensation insurance premiums were being withheld and Rogers and his men would be covered under Stephens' workmen's compensation policy. Stephens corroborated this understanding by testifying that he told his subcontractors he considered all of them and their employees as his employees for purposes of workmen's compensation coverage. He never made any distinction between the subcontractors and their employees when he reported any injuries to appellant Rockwood. Stephens himself had had no employees since 1964. In other words he carried workmen's compensation with appellant Rockwood for the benefit of his subcontractors and their employees. He considered Rogers Blankenship one of his subcontractors. Rogers' wife testified that when one of Rogers' men was injured, he would be referred to Edgar Stephens who handled the claim for them.

Harry Whatley, the adjuster for Rockwood in southern Arkansas, testified that he did all of the adjusting for Rockwood on the policies of insurance written for Stephens during the past ten to fifteen years. He knew as early as 1968 that Stephens was producing pulpwood exclusively through subcontractors. He said, as far as he was concerned, it didn't make one bit of difference whether the man that got hurt was a subcontractor or a producer or whether he was an employee of a subcontractor, as long as he was hurt while he was working and producing wood for Stephens. When various claim forms were sent to Whatley's office, he would correct them if necessary to show the name of Stephens & Stephens as the employer and listed the subcontractor as foreman.

Dale Schrock, claims supervisor for Rockwood, testified that Rockwood paid claims whether they were subcontractors or employees of subcontractors. As an examiner or

claims supervisor, he didn't make any distinction in their status in determining whether or not the claimant was covered. Rockwood had not denied a single claim filed by Stephens until this accident resulting in these death claims. It is undisputed that appellant Rockwood issued workmen's compensation policies to Stephens during the past ten years, accepted premiums thereon, and has consistently paid numerous claims on Stephens' subcontractors and their employees during this time without making any distinction between them. Some of these claims involved three of the four employees who were killed. There is evidence that the subcontractors and their employees were led to believe they had workmen's compensation coverage by what they were told, by the premiums deducted and paid.

The evidence is amply substantial to support the Commission's finding that appellants were estopped to deny coverage. See *Phoenix of Hartford* v. *Coney*, 249 Ark. 447, 459 S.W. 2d 558 (1970); *Hale* v. *Mansfield Lbr. Co.*, 237 Ark. 854, 376 S.W. 2d 670 (1964); and *Stillman* v. *Jim Walter Corp.* 236 Ark. 808, 368 S.W. 2d 270 (1963). Consequently, here, we find no merit in appellants' assertion that the Commission's finding that appellees' decedents were statutory employees of Stephens & Stephens is erroneous and unsupported by substantial evidence.

Neither can we agree with appellants' contention that the evidence is insubstantial to support the Commission's finding that the claims are not barred under the going and coming rule. Appellants argue that there is no evidence at all to prove Rogers Blankenship's death arose out of and in the course of his employment. Appellant argues further that the only possible way the claimant could escape the operation of the going and coming rule would be to invoke the dual purpose doctrine; it has not been proven that a business purpose would have been made had not the personal purpose, that is going to work, been accomplished. Also the record is totally bereft of any proof that Rogers Blankenship was transporting anything to the woods relating to the cutting operation other than giving his "own" employees a ride.

The testimony is undisputed that it was Rogers Blankenship's regular and customary practice to pick up part of his crew each morning and transport them to the work site

and home again. On the morning of the accident, Rogers had filled his truck's gas tank, picked up his men and was taking them out to the job site. He paid another employee an extra hourly wage to transport the rest of his crew to the job site and return them home. Each day Rogers carried ice for the water kegs, as well as extra gas and oil necessary for the equipment, which he transported to the job site. W. R. Blankenship testified that it was absolutely necessary for someone to buy the gas and oil, pick up the ice, water and other supplies which were needed for the day's operation. If Rogers did not do it, someone else would have to. The evidence is amply substantial to support the Commission's finding that the claims were not barred under the going and coming rule. See Larson, Workmen's Compensation, § 18.10 *et. seq.* (1972); *Blankinship Logging Co.* v. *Brown*, 212 Ark. 871, 208 S.W. 2d 778 (1948); and *Hunter* v. *Summerville*, 205 Ark. 463, 169 S.W. 2d 579 (1943).

Appellants assert, however, there is substantial evidence in support of the Commission's finding that appellee Christie Lee Davis, was not entitled to widow's benefits and, therefore, the trial court erred in reversing the Commission. We must agree. The Workmen's Compensation Act, Ark. Stat. Ann. § 81-1302 (1) (Repl. 1960), defines a widow as follows:

'Widow' shall include only the decedent's legal wife, living with or dependent for support upon him at the time of his death.

Appellants argue that in order to qualify for widow's benefits two separate elements must be proved: (1) that the claimant was the decedent's legal wife and (2) that she was either living with or dependent for support upon him at the time of his death. Appellant asserts that claimant, Christie Lee Davis, does not meet the statutory requirements that she was either living with or dependent upon the decedent at the time of his death and, therefore, has only met one of the criteria to be a widow entitled to benefits. Appellee Davis responds that Arkansas is one of those states which conclusively presume dependency based on the mere existence of the legal relationship, citing *Chicago Mill & Lumber Co.* v. *Smith*, 228 Ark. 876, 310 S.W. 2d 803 (1958). We must agree with appellants' position since we hold, as did the Commission, that *Chicago Mill* is not controlling in the case at bar. There

we observed "here, the husband and father was completely void of any sense of his family obligation." In the case at bar there is no evidence that Elbert Davis was insensitive to his family obligations. Christie testified that she had "completely separated" from Elbert in 1967 or 1968 and had not lived with him since that time. Since then she admits having two illegitimate children who were fathered by her "boyfriend," Henry Lee Dunn. She is gainfully employed and Henry contributes to her support. According to her she refused Elbert's support. She admitted that "[H]e has offered me money at times, but I would not accept it from him." Clearly, the facts of this case are distinguishable from *Chicago Mill*. There is ample substantial evidence to support the Commission's finding that Christie Lee Davis is not the widow of Elbert Davis within the meaning and definition of the Workmen's Compensation Act and, therefore, is not entitled to benefits.

Henry Lee Dunn, Jr., contends on cross-appeal that there is no substantial evidence to support the Commission's finding that he is not the son of Elbert Davis. Cross-appellant asserts that the presumption of legitimacy is so strong that it can only be overcome by "the clearest evidence" of either impotency or non-access. *Morrison, Admx.* v. *Nicks,* 211 Ark. 261, 200 S.W. 2d 100 (1947). Appellants recognize the strong presumption of legitimacy of a child during wedlock. However, they argue that the presumption has been overcome and, therefore, the finding by the Commission that Henry Lee Dunn, Jr., is not the son of Elbert Davis is supported by substantial evidence. We must agree with the appellants.

Christie Lee Davis, cross-appellant's mother, and Elbert Davis, decedent, were married in 1959. They had no children when they separated approximately nine years later. Elbert was killed in 1973 or about four years following their separation. Christie Lee testified that she had access to or sexual relations with Elbert, the decedent, up until she left him in November, 1968, which was about seven and one-half months before Henry, Jr., was born in July, 1969. However, this contradicts her earlier signed statement in which she said she separated from Elbert in late 1967 or early 1968. According to her testimony at the hearing, there is a "possible chance" that Elbert is the father. About a month following the last asserted separation, she admittedly began having sexual relations with Henry Lee Dunn. She admitted in her signed

statement that Elbert Davis was not the father of her son, Henry Lee Dunn, Jr. She testified that she had told the individual who took her statement that Henry Lee Dunn is the boy's father and she had told Elbert the boy was not his. Henry Lee Dunn, himself, signed a statement at the hospital when the child was born acknowledging the child was his. She also admitted that she told the nurse attending her at the hospital that Henry Lee Dunn was the father of the child. The birth certificate, signed by her doctor, reflects the child's name as Henry Lee Dunn. She, further, admitted that Henry Lee, the father, was living with her when the child was born and subsequently she had two other children by him. She agrees they are Henry Lee's children and she claims no benefits for them. Henry Lee supports all three of the children.

When we review that evidence which is most favorable to the appellee, as we must do on appeal, we hold the Commission's finding, that Henry Lee Dunn, Jr., is not the son of the decedent Elbert Davis, is supported by the clearest evidence of a substantial nature. Cf. *Richardson v. Richardson,* 252 Ark. 244, 478 S.W. 2d 423 (1972).

Appellants also contend that the Commission's finding that Emma Logan was not entitled to widow's benefits is supported by substantial evidence and, therefore, the court erred in overruling the Commission. The Commission found that they could assume that Emma Logan was the legal wife of decedent but that she was not living with nor dependent upon the decedent at the time of his death. As indicated, the Workmen's Compensation Act, Ark. Stat. Ann. § 31-1302 (1) (Repl. 1960), defines widow as:

'Widow' shall include only the decedent's legal wife, living with or dependent for support upon him at the time of his death.

In the present case appellee Emma testified that she married Oscar in 1947. Two years later they separated and remained separated for about twenty-five years. During this interval she was married to two other men. She had two children by one of these marriages. She never divorced Oscar nor had she ever received any papers stating that he had sued her for divorce. During the last three years preceding Oscar's accidental death, she lived "off and on" with him on weekends

at his residence or he would visit with her at her home in a nearby town. He contributed some to her support and without her knowledge he had included her in his 1970 and 1972 income tax returns.

The Commission found that *Chicago Mill & Lumber Co.* v. *Smith, supra,* is not applicable and we agree. As indicated, in *Chicago Mill* we observed the husband was insensitive to his marital obligations. Certainly, we do not believe that the legislature intended that a widow can claim benefits as a dependent when, as here, she abandons a marriage for twenty-five years during which time she marries two other men and has children by one of those marriages. This is true even though she testified that during the past three years she lived intermittently on weekends at his or her residence and he contributed some to her support. Suffice it to say that there is substantial evidence to uphold the Commission's finding that she was not the widow of Oscar Logan within the meaning and definition of the Workmen's Compensation Act.

Affirmed in part and reversed in part on direct appeal.

Affirmed on cross-appeal.

SMITH and JONES, JJ., concur.

FOGLEMAN, J., dissents.

J. FRED JONES, Justice. I agree with the majority opinion in this case but for additional reasons than those expressed by the majority. I consider dependency more important than genealogy when considering the claims of children in compensation death cases.

It is my view that in compensation death cases, no one except *dependents* of a deceased employee is entitled to compensation benefits under the Act. Ark. Stat. Ann. § 81-1315 (Repl. 1960). Subsection (c) of § 81-1315 reads as follows:

Subject to the limitations as set out in section 10 [§ 81-1310] of this act, compensation for the death of an employee shall be paid to those persons who are wholly dependent upon him in the following percentage of the

average weekly wage of the employee, and in the following order of preference.

First. To the widow if there is no child, thirty-five (35) per centum, and such compensation shall be paid until her death or remarriage.
To the widower if there is no child, thirty-five (35) per centum, and such compensation shall be paid during the continuance of his incapacity or until remarriage.

Second. To the widow or widower if there is a child, the compensation payable under the First above, and fifteen (15) per centum on account of each child.

Third. To one child, if there is no widow or widower, fifty (50) per centum. If more than one child, and there is no widow or widower, fifteen (15) per centum for each child, and in addition thereto, thirty-five (35) per centum to the children as a class, to be divided equally among them.

Fourth. To the parents, twenty-five (25) per centum each.

Fifth. To brothers, sisters, grandchildren and grandparents, fifteen (15) per centum each.

Section 81-1315 (i) provides for partial dependents as follows:

(1) If the employee leave dependents who are only partially dependent upon his earnings for support at the time of injury, the compensation payable for such partial dependency shall be in the proportion that the partial dependency bears to total dependency.

(2) In any claim for partial dependency where the average weekly contributions for support were not such as to entitle all dependents to compensation in the aggregate sum of seven dollars [$7.00] per week, such dependents shall receive compensation for a period not to exceed 450 weeks, in an amount not to exceed the amount of average weekly contributions of the deceased

employee for the support of such dependents.

Of course, a widow legally married to, and living with, the decedent at the time of his death is made wholly dependent under § 81-1315 (c) as a matter of law by definition under § 81-1302 (4) (1) but not so with the children.

It is my view that a child must be wholly or partially dependent under § 81-1315 (c) or (i), *supra,* and, if it is dependent upon the deceased, it makes no difference under § 81-1302 (j) whether it is a natural child, a posthumous child, a preinjury adopted child, a step-child, an acknowledged illegitimate child of the decedent or spouse of the decedent, or a foster child. Conversely, if an employee decedent under the Act should leave surviving him a child or children in each of the above categories, none of them would be entitled to compensation benefits under the Act unless wholly or partially dependent upon the decedent at the time of his injury (§ 81-1315 [h]). *Proof* of dependency and the *burden of proof* are entirely different matters.

I am not unmindful of the language employed concerning the dependent children in *Chicago Mill & Lbr. Co.* v. *Smith,* 228 Ark. 876, 310 S.W. 2d 803, and the child in *Holland Const. Co.* v. *Sullivan,* 220 Ark. 895, 251 S.W. 2d 120. Certainly I would agree that a child may be wholly dependent upon its parent for support whether it is actually receiving support or not, as was the situation in *Chicago Mill, supra,* as I interpret our decision in that case. It is my view that actual contribution of support money is, at the most, only some evidence of dependency. I would indulge a rebuttable *presumption* of total dependency of a natural child of a deceased employee when the child is under 18 years of age, but that is as far as I could go under the law, as I interpret it.

I have no quarrel with the *Holland* decision under the law as it was when that case was decided. The 1939 Compensation Act, Act 319 of 1939, applied to *Holland,* and in the 1939 Act § 15 (c) simply provided as follows:

(c) Subject to the limits prescribed in Section 15 (b) the following percentage of the average weekly wages of the deceased employee shall be paid as compensation for

death to the persons entitled thereto under this Act, and the following order of preference:

(1) To the widow if there is no child, thirty-five (35) per centum, and such compensation shall be paid until her death or re-marriage;

(2) To the widower if there is no child, thirty-five (35) per centum, and such compensation shall be paid during the continuance of dependency or until re-marriage;

(3) To the widow or widower if there is a child, the compensation payable under paragraph (1) or (2) as the case may be, and, in addition thereto, ten (10) per centum on account of each such child; in case of the death or re-marriage of such widow or widower, fifteen (15) per centum for each child;

(4) To the children, if there is no widow or widower, fifteen (15) per centum for each child, and in addition thereto, thirty-five (35) per centum to be equally divided between said children, and if there be only one child, he or she shall receive the entire fifteen (15) per centum, plus the additional thirty-five (35) per centum.

(5) To the parents, twenty-five (25) per centum to each, and such compensation shall be paid during the continuance of dependency;

(6) To brothers, sisters and grandchildren, fifteen (15) per centum for each brother, sister, or grandchild.

In § 2 (j) of the 1939 Act "child" was defined as follows:

"Child" includes a posthumous child, a child legally adopted prior to the injury of the employee, and a step-child or acknowledged illegitimate child dependent upon the deceased, but shall not include married children unless wholly dependent upon deceased. "Grandchild" means a child as above defined of a child as above defined. "Brother" and "Sister" includes step-brothers and step-sisters, half brothers and half sisters, and brothers and sisters by adoption, but shall not in-

clude married brothers nor married sisters unless wholly dependent upon the deceased. "Child," "grandchild," "brother," and "sister" shall include only persons who at the time of the death of the deceased are under the age of eighteen (18) years.

These sections of the 1939 Act were all changed by the adoption of Initiated Measure No. 4 in 1948, Ark. Stat. Ann. §§ 81-1301 — 81-1349. Section 81-1315 (c) now appears as above set out and "child" is defined in § 81-1302 (j) as follows:

(j) "Child" means a natural child, a posthumous child, a child legally adopted prior to injury of the employee, a step-child, an acknowledged illegitimate child of the deceased or spouse of the deceased, and a foster child. "Child" shall not include married children, unless wholly dependent upon the deceased.

Thus, married children were excluded from the definition of "child" under the 1948 Act but were placed back within the statutory definition of "child" if still totally dependent upon the decedent after marriage. The same applies to children above 18 years of age under (j) (3) if they are mentally or physically incapacitated.

Partial dependency as provided in § 81-1315 (i) (1) and (2) was not mentioned in the 1939 Act, and partial dependency is not involved in this case, but certainly there is no evidence in the record that Henry Lee Dunn, Jr. was dependent to any extent on the decedent at the time of his injury which resulted in death. I do not say that the *absence* of affirmative evidence of dependency standing alone should defeat Henry Lee's claim; I do say, however, that, in my opinion, the affirmative evidence that Henry Lee, Jr. was *not* dependent upon the decedent, with no evidence to the contrary, was alone sufficient to defeat his claim. Consequently, it is my view that whether Henry Lee, Jr. was illegitimate as a matter of proof or legitimate as a matter of unrebutted presumption, it makes no difference in this case. Regardless of who his father was, he was not a dependent of the decedent under the evidence in the record as I read it and he was not entitled to compensation as a dependent child under the com-

pensation law as I interpret it.

I cannot escape the feeling that there must have been some reason for, and purpose in, adding the total and partial dependency provisions in the 1948 Act when it did not exist in the 1939 Act; and, if the *Chicago Mill* and *Holland* decisions are interpreted to only require proof of age of the children and their relationship to the decedent to the exclusion of proffered evidence of nondependency, I would overrule those decisions to that extent. It must be remembered that parents may be dependents of employed children and entitled to compensation benefits under the Act as well as the other way around. If a 17 year old child is a dependent within the meaning of the Act simply by virtue of the relationship to its father, what about a father's claim for death benefits when wholly or partially dependent on the 17 year old child?

GEORGE ROSE SMITH, J., joins in this concurrence.

JOHN A. FOGLEMAN, Justice, dissenting. I concur in all of the majority opinion except that part relating to the cross-appeal on Henry Lee Dunn, Jr. I must take exception to that portion and to the approach taken in the concurring opinion. First, I should say that even though I would probably agree philosophically with the approach taken by my brother Jones in his concurring opinion, it seems to me to have been foreclosed by the interpretation given Ark. Stat. Ann. §§ 81-1302 (j), 81-1315 (c) and 81-1315 (d) (Repl. 1960) in *Chicago Mill & Lumber Co.* v. *Smith,* 228 Ark. 876, 310 S.W. 2d 803, where we said:

> *** This section of the Act [81-1302 (j)] is fairly open to the construction that unmarried children are entitled to compensation although the deceased parent was not supporting them at the time of his death, but married children are not entitled to compensation unless they were wholly dependent on deceased.

> *****

It would be possible to construe this provision of the Act [81-1315 (c)] as depriving a widow or child of any compensation when, as here, the husband and

father was completely void of any sense of his family obligation. But it is a rule that remedial legislation shall be liberally construed. We believe the Legislature used the term "wholly dependent" in the sense of applying to those ordinarily recognized in law as dependents, and this would certainly include wife and children. ***

In *Holland Construction Co. v. Sullivan*, 220 Ark. 895, 251 S.W. 2d 120, in construing the 1940 Workmen's Compensation Law it was held that the child of a deceased natural parent was entitled to compensation, although he had not been dependent on the natural parent — in fact, the child had been adopted by another person, who was supporting him. Appellant contends that the 1948 Workmen's Compensation Act amended the 1940 Act to the extent that the child of a deceased parent cannot recover when the parent at the time of his death was not contributing to the support of the child. True, the Act could be so construed, but such a construction would leave unsolved the meaning of Ark. Stat. § 81-1302 (j), which says that a married child does not come within the definition of "child" unless wholly dependent. Nor do we think that § 81-1315 (c), dealing with partial dependency, precludes recovery by the wife and children who are dependents within the usual meaning of the word. There is no contention in this case that the mother or children are capable of taking care of themselves. For all the record shows, they perhaps are the objects of charity.

Then we followed *Holland Construction Co. v. Sullivan*, 220 Ark. 895, 251 S.W. 2d 120, where we held that a child was a dependent of his natural father, even though he had been adopted by another, regardless of the fact that there was no *actual* dependency of the child upon his natural father, before the change in statute in 1949 mandated that result. In that case, we said:

Thus, there is entirely absent from the 1939 Workmen's Compensation Law, any statement either (a) that the act of adoption takes a child out of the terminology of "child" of the natural father, or (b) that actual dependency must be proved as regards a natural child

under 18 years of age. In fact, the Act looks entirely to the opposite conclusion: because in Sec. 81-1302 (j) [Ark. Stat. Ann. 1947], a stepchild or an acknowledged illegitimate child must be shown to be dependent on the deceased; and a married child is not included unless wholly dependent on the deceased. The requirement of *proof of dependency* for stepchildren, acknowledged illegitimate children and married children, indicates rather clearly that dependency does not have to be proved as regards a natural child under 18 years of age. Likewise, under § 81-1315 (d) [Ark. Stat. Ann. 1947], as above quoted, it is stated that the dependence of a child will terminate at 18 except for a physically or mentally incapacitated child. The statement—that a physically or mentally incapacitated child may be found to be dependent after 18—indicates that no proof of dependence need be made by any natural child who is under 18 years of age.

Changes in the law since this case was decided have not made its precepts less applicable. There is no longer a requirement that a stepchild or an acknowledged illegitimate child be wholly dependent upon the deceased, as there was in the 1939 law. Cf. Ark. Stat. Ann. § 81-1302 (j) (1947) and Ark. Stat. Ann. § 81-1302 (j) (Repl. 1960). Children over 18 years of age are still not dependents unless physically or mentally handicapped. See Ark. Stat. Ann. §§ 81-1302 (j) (3) and 81-1315 (d) (Repl. 1960). Furthermore, in *Sullivan,* we cited with approval a Delaware holding, which in turn quoted from a Pennsylvania decision, that a legitimate child is entitled to workmen's compensation benefits from the employer of the child's deceased parent, irrespective of *actual* dependency. So "genealogy" is, after all, more important than dependency as our act has been written and interpreted.

While the majority gives lip service to the presumption of legitimacy, I find no precedent for the casual treatment given it in finding somehow that there was support for the commission's findings "by the *clearest* evidence of a substantial nature." [Emphasis mine.]

In this case the commission failed to properly apply the presumption that has been said to be one of the strongest

known to the law, i.e., that a child born during wedlock is the child of the husband. *Thomas* v. *Barnett,* 228 Ark. 658, 310 S.W. 2d 248. The general rules as to burden of proof in common law actions for personal injuries and in civil actions generally, ordinarily apply to workmen's compensation proceedings. *Bradshaw* v. *Claridy,* 213 Tenn. 297, 375 S.W. 2d 852 (1964). See also, *Pannell* v. *State Compensation Commissioner,* 126 W. Va. 725, 30 S.E. 2d 129 (1944). The presumptions applied in common law and civil cases are also commonly applied in workmen's compensation cases. See, e.g., *Brynildsen* v. *Mt. Vernon Novelty Curtain Co.,* 239 App. Div. 566, 268 N.Y.S. 600 (1933); *RCS Lumber Co.* v. *Sanchez,* 136 Colo. 351, 316 P. 2d 1045 (1957). The general principle as to presumptions as to legitimacy and the burden of proof to rebut it which is applicable in other cases is likewise applicable in workmen's compensation cases. *Hooley* v. *Hooley,* 141 Ind. App. 101, 226 N.E. 2d 344 (1967); 2 Workmen's Compensation Law, Larson, 11-37, § 62.22. Evidence to rebut the presumption of legitimacy must be clear, cogent and convincing. *Hooley* v. *Hooley,* supra; *Ash* v. *Modern Sand & Gravel Co.,* 234 Mo. App. 1195, 122 S.W. 2d 45 (1938).

By application of such presumptions, it has been held in workmen's compensation cases that the presumption of legitimacy may be overcome by evidence that the husband could not have had access to the mother when, in the course of nature, the child must have been conceived. *Hooley* v. *Hooley,* supra; *Ash* v. *Modern Sand & Gravel Co.,* supra; *Smith* v. *National Tank Co.,* 350 P. 2d 539 (Wyo., 1960). Even in compensation cases, in order to overcome the presumption of legitimacy, it has been held, on the basis of rules in other civil cases, that it must be shown conclusively that the lawful husband could not have had intercourse with the wife at the beginning of any reasonable period of gestation. *Ash* v. *Modern Sand & Gravel Co.,* supra.

We have said that the presumption may be overcome by sufficient evidence of impotency or entire absence of the husband at the time when the child, in the course of nature, could have been begotten. *Earp* v. *Earp,* 250 Ark. 107, 464 S.W. 2d 70. The presumption may be overcome only by the *clearest* evidence that the husband was impotent or without access to the mother. *Thomas* v. *Barnett,* supra. We have said

that it must be plainly proved that it was impossible that the husband could have been the father. *Jacobs v. Jacobs*, 146 Ark. 45, 225 S.W. 22. This may be done by blood tests or by showing that the husband could not have had access to the mother. *Richardson v. Richardson*, 252 Ark. 244, 478 S.W. 2d 423; *Jacobs v. Jacobs*, supra.

This degree of proof was not even remotely approached in this case. There was no evidence which could possibly have afforded a basis for overcoming the presumption other than the testimony of Christie Lee Davis. She testified that she and Elbert Davis lived in Crossett until the last of November, 1968, having then been separated a week or two. She said she would come and go and that he would come to Hamburg where she was and go back to Crossett and that the final separation was in the last part of November. Both continued to live in Ashley County until his death. She said that he continued to "come around her" until his death. Henry Lee Dunn was born on July 14, 1969, six to seven months after the separation. She started seeing Henry Lee Dunn, Sr. in December, 1968. She said that only Elbert Davis could be this child's father, but on another occasion said that he "could have" been. She said she had sexual relations with Davis right up to the time of the separation, and had not during the preceding six months had sexual relations with anyone else. The physician's records showed that this child's birth was normal.

We have said that when the husband resided within thirty miles of the place the wife lived at all times within the period in which the child could have been begotten, it is a matter of common knowledge that access of the husband is not impossible. *Scott v. State*, 173 Ark. 625, 292 S.W. 979.

It is true that the credibility of this witness was suspect because of the fact that she had made conflicting and contradictory statements, but still her testimony is the only evidence that could have been the basis for rebuttal of the strong legal presumption. Discounting her testimony because of her obvious interest would strengthen, rather than weaken, the presumption.

Whatever adults may have said about the paternity of Henry Lee Dunn, Jr., he has never been consulted or given an

opportunity to speak. Because he cannot, the strongest presumption known to the law was afforded for the protection of those like him, and no one else. It seems capricious to sweep it away on the unsatisfactory evidence presented. A liberal interpretation and application of the Workmen's Compensation Act calls for better treatment of this helpless minor. I would reverse the judgment of the circuit court and the action of the commission on the claim of Henry Lee Dunn, Jr.