Vincent THOMAS *v.* Patti Ann PACHECO

87-100                                740 S.W.2d 123

Supreme Court of Arkansas
Opinion delivered November 23, 1987

*Sherman & James*, by: *Paul J. James*, for appellant.

*Redden & Associates*, by: *Michael Redden*, for appellee.

DARRELL HICKMAN, Justice. Patti Ann Pacheco brought this case to determine the father of a child born to her on June 3, 1984. She was married at the time to Carlos Pacheco but claimed that Vincent Thomas was the father. Blood tests indicated that the husband could not be the father and that it is virtually certain (99.5%) that Thomas is the father. The county court and the trial judge found that Thomas is the father.

In this case, out of state experts performed and certified the blood tests, and when one of those experts failed to honor a subpoena, the trial judge ordered a telephone deposition of another. Under the circumstances, this procedure did not satisfy the statutory right to subpoena the expert performing the blood tests for questioning at trial. *See* Ark. Stat. Ann. § 34-705.2 (1985). The trial judge should not have ordered the deposition as a substitute for a face-to-face confrontation. It was also error for the trial judge to permit the husband and wife to testify that they did not have sexual intercourse during the critical time period. Such testimony, concerning the non-access of the husband in a bastardy proceeding, has long been deemed inadmissible in Arkansas. These two errors require us to reverse the judgment and remand the case for further proceedings.

## THE FACTS

Patti Pacheco and her husband, Carlos Pacheco, had one child when they separated in June of 1983. They both testified to seeing each other on a regular basis but denied that they had sexual relations from the time they separated until April, 1984, when Mrs. Pacheco was seven months pregnant.

Mrs. Pacheco met Vincent Thomas in July, 1983, when both worked at a Little Rock restaurant. She testified that they began having sexual intercourse August 5, 1983. She remembers the

date because two days later she left for a trip to Washington. Mrs. Pacheco testified that from that date until she resumed sexual relations with her husband, two months before the baby was born, she did not have sexual intercourse with anyone other than Thomas.

On June 3, 1984, Mrs. Pacheco gave birth to a full term baby boy. At the time, she and her husband had reconciled, and the birth certificate lists Carlos Pacheco as the father of the child. In addition, her husband's insurance company paid all the medical expenses relating to the delivery. The Pachecos have remained married.

A year after the child was born, Mrs. Pacheco brought this paternity suit against Vincent Thomas in Pulaski County. Thomas admitted that he had sexual relations with the appellee but denied paternity, claiming that the relationship did not begin until October, 1983. The county court apparently ordered all interested parties to undergo blood tests. (Part of the record was lost, and we only have an agreed upon reconstruction, approved by the court.) The tests were conducted by Roche Biomedical Laboratories. Thomas' blood was drawn at the laboratory's Little Rock location, while the blood of the child and Mr. and Mrs. Pacheco was drawn at Roche's office in San Antonio, Texas. All of the blood samples were then sent to Roche's office in Burlington, North Carolina, for analysis.

Mr. Pacheco's test established that he could not be the child's father, because he lacks the leucocyte antigen A26, which is present in the child and absent in the mother. His test results were certified by an affidavit signed by Dr. Ronald Barwick. The test on Thomas revealed that he possesses the leucocyte antigen A26, and that he shares other common genetic markers with the child. This test indicates that it is 99.5% probable that Thomas is the father of the child. The results of his test were certified by an affidavit signed by Dr. Scott Foster. Relying on this and other evidence, the county court ruled that Thomas was the father and ordered him to pay half of the laying-in expenses as well as child support in the amount of $30 per week. Thomas appealed to the Pulaski County Circuit Court for a *de novo* review. The circuit court affirmed the county court's decision, and Thomas appealed to us.

## THE ISSUES

(1) Testimony of the husband and wife as to non-access.

■ In the circuit court, Thomas made numerous objections to the Pachecos' testimony that they did not have sexual intercourse during the period of conception. Nevertheless, the trial court allowed them to testify freely on this subject. In a bastardy proceeding, the husband and wife cannot testify to the non-access of the husband. This has been a common law rule of evidence since 1770 and is known as Lord Mansfield's Rule. Arkansas adopted this rule in 1915 in *Kennedy* v. *State*, 117 Ark. 113, 173 S.W. 842 (1915), and has adhered to it ever since. *See Dunn* v. *Davis*, 291 Ark. 492, 725 S.W.2d 853 (1987); *Spratlin* v. *Evans*, 260 Ark. 49, 538 S.W.2d 527 (1976). The reason for prohibiting this testimony is that it defiles the married state of the parties and allows married people to declare illegitimate a child born of their marriage, a child the law presumes to be legitimate. Lord Mansfield's Rule is an old rule, but not without its critics. Indeed, Dean Wigmore, a prominent scholar in the field of evidence, is one of the foremost critics of the rule. He claims that there was never any true precedent for the rule announced by Lord Mansfield, and that the asserted reasons for the rule are artificial. He argues that there is no indecency in allowing people to testify that they were apart during a particular time period, and that if it is indecent to allow parties to bastardize their children, then the rule should not allow it by any means. Wigmore points out that under the rule, the parties may testify as to any fact leading to the conclusion of illegitimacy other than non-access. Finally, he argues that the best obtainable evidence should be used to prove every disputed fact, since the primary object of the common-law rules of evidence is to ascertain the truth concerning the facts in issue. 7 J. Wigmore, *Wigmore on Evidence* § 2063 (1978).

Wigmore makes a good argument. But there is more at issue than a rule of evidence. Marriage is still considered an honorable institution; children born during marriage should be deemed legitimate, and legal efforts to declare such children illegitimate are not and should not be made easy.

■ Belief in that principle is so great that we have created a legal presumption to protect it. This presumption, that a child born during marriage is the legitimate child of the parties to that

marriage, is one of the strongest presumptions recognized by the law. *See Jacobs* v. *Jacobs*, 146 Ark. 45, 225 S.W. 22 (1920). It can be overcome, but not easily. We have consistently held that the presumption is rebuttable only by the strongest type of conclusive evidence, such as the husband's impotence, or the non-access of the parties. *See Dunn* v. *Davis, supra; Spratlin* v. *Evans, supra*. It is in this regard that Lord Mansfield's Rule comes into play. The appellee's attorney in this case candidly admits that he offered the testimony of Mr. and Mrs. Pacheco to establish the non-access of the parties in an effort to overcome the presumption of legitimacy; that is precisely what Lord Mansfield's Rule will not allow. We decline to abandon this time-honored rule of evidence that favors the institution of marriage and protects the innocent children born thereof. Children should not, if at all possible, pay for the irresponsible conduct of adults. We will continue to prohibit the parties to a marriage from denying the husband's participation in a birth; proof of such non-access must come from other sources.

### (2) The blood tests.

In *Richardson* v. *Richardson*, 252 Ark. 244, 478 S.W.2d 423 (1972), we approved the use of blood tests to determine paternity, and undoubtedly the tests are valuable evidence. However, in order for such tests to be admissible, the proper procedure, as set forth in Ark. Stat. Ann. §§ 34-705.1 and 34-705.2 (Supp. 1985), must be followed. Section 34-705.1 provides:

> Whenever it shall be relevant to the prosecution or the defense in an illegitimacy action, the trial court may direct that the defendant, complainant and child submit to one (1) or more blood tests or other scientific examinations or tests, to determine whether or not the defendant can be excluded as being the father of the child, and to establish the probability of paternity if the test does not exclude the father [defendant]. The results of the tests shall be receivable in evidence. The tests shall be made by a duly qualified physician, or physicians, or by another duly qualified person, or persons, not to exceed three (3), to be appointed by the court. The costs of the test shall be taxed as other costs in the case or, in the court's discretion, may be taxed against the county. Such experts shall be subject

to cross-examination by both parties after the court has caused them to disclose their findings. Whenever the court orders such blood tests to be taken and one (1) of the parties shall refuse to submit to such test, such fact shall be disclosed upon the trial unless good cause is shown to the contrary.

Section 34-705.2 provides:

(a) A written report of the test results by the duly qualified expert performing the test certified by an affidavit duly subscribed and sworn to by him before a notary public, may be introduced in evidence in illegitimacy actions without calling such expert as a witness. If either party shall desire to question the expert in the case where he has performed the blood tests, the party shall have him subpoenaed within a reasonable time prior to trial.

(b) Actions brought in the State of Arkansas to establish paternity may be brought at any time.

Appellant made several objections to the admissibility of the blood tests based on non-compliance with these statutes. First, he argues that Roche was not properly appointed by the county court under § 34-705.1 to perform the blood tests. Based on the record before us, we cannot say that Roche Laboratories was not properly appointed by the county court to perform the tests. Second, he argues that the right to subpoena the expert performing the blood tests for questioning at trial, which is granted by § 34-705.2, was denied him. The appellant issued a subpoena to Dr. Scott Foster in North Carolina eight days before trial. However, Dr. Foster was not served until three days before trial, and he refused to honor the subpoena.[1] Over the appellant's objection, the trial judge ruled that under the circumstances a telephone deposition of Dr. Ronald Barwick would be a reasonable alternative. The deposition was conducted, reduced to writing, and introduced into evidence.

---

[1] Dr. Foster certified one of the blood tests but did not actually "perform" it. Several questions in this case arose, because the experts certifying the blood tests were not the experts who performed the tests. Appellant's argument that the statute requires them to be the same person, based on *Tolhurst* v. *Reynolds*, 21 Ark. App. 94, 729 S.W.2d 25 (1987), came too late, in his reply brief.

■ While it appears that § 34-705.1 does not require a county judge to appoint a resident of Arkansas to perform blood tests in bastardy proceedings, we hold that the procedure ordered by the judge cannot effectively deny a party the right to subpoena that person and confront him in court. Ark. Stat. Ann. § 34-705.2 provides that the expert performing the test may be subpoenaed if a party wishes to question him at trial. In this case, when the nonresident expert subpoenaed by the appellant refused to honor the subpoena, there was no practical way to enforce it. ARCP Rule 45 only relates to the enforcement of subpoenas served inside the state. *See* ARCP Rule 45, note 5. In criminal cases, material witnesses may be compelled to honor out of state subpoenas under the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases, Ark. Stat. Ann. §§ 43-2005—43-2009 (Repl. 1977). No such similar power exists in civil cases, and it is generally recognized that a court cannot compel the attendance of a witness who is beyond the court's jurisdiction. *See* 97 C.J.S. *Witnesses* § 17 (1957).

■ We hold that if a county judge is going to use a nonresident firm or individual to perform blood tests in bastardy proceedings, it is his responsibility to see that the person performing the blood test is available for trial, if the proof requires his presence, as though that person were an Arkansas resident; he must be subject to subpoena just as the statute provides. Surely, the legislature did not intend to deprive a party of the right to directly confront the person performing a blood test in a paternity suit. Thus, while ARCP Rule 30(b)(7) authorizes a court to order a telephone deposition in some circumstances, we find that the trial court in this case abused its discretion in doing so.

Reversed and remanded.

PURTLE and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. Any rule adopted more than two hundred years ago that espouses fiction over fact needs to be reexamined. Lord Mansfield's Rule is a prime example.

PURTLE, J., joins this dissent.