PEEK v. ADAMS.

4-9584                                          243 S. W. 2d 562

Opinion delivered November 12, 1951.

Rehearing denied December 10, 1951.

*John C. Sheffield,* for appellant.

*Cracraft & Cracraft* and *Burke, Moore & Burke,* for appellee.

HOLT, J. This action was brought under the Workmen's Compensation Law, Act 319 of 1939.

Mrs. Winnie Peek, appellant, was the mother of E. C. Peek, Jr. August 5, 1948, young Peek was killed by the overturning of a tractor which he was driving. At the time, his average weekly earnings amounted to $30. He was sixteen years of age, and Mrs. Peek was dependent upon him for support. Mrs. Peek was a widow, her husband having died in 1945.

On a hearing, the Commission found: "(1) That E. C. Peek, Jr., at the time of his injury and death, was not an employee of John W. Adams. (2) That the New Amsterdam Casualty Company, as the insurer of John W. Adams, was not liable for the loss occasioned by the injuries and death of E. C. Peek, Jr. (3) That E. C. Peek, Jr., was the employee of the districts here involved, and the districts were liable to Mrs. Winnie Peek, dependent mother of the deceased, and that the districts are not excepted from the Workmen's Compensation Law as 'political subdivisions of the State of Arkansas within the meaning of the Act,' ''—and awarded Mrs. Peek $7.50 weekly, "the same being 25 percent of the average weekly

wage of $30, said payments to continue subject to the provisions and limitations of the Workmen's Compensation Act, not to exceed in any event 450 weeks or $7,000.''

Mrs. Peek appealed to the Circuit Court of Phillips County from that part of the holding of the Commission that Adams and the Insurance Company were not liable. The three districts have appealed from that part of the Commission's findings that young Peek was their employee and therefore they were liable to Mrs. Peek.

The Circuit Court held that the Commission correctly found that neither Adams nor the Insurance Company was liable but that the districts were political subdivisions of the State and not liable and the award against the districts was reversed and set aside.

The primary and decisive question presented is whether young Peek at the time of his injury, which resulted in his death, was an employee of Adams and covered by Adams' insurance carrier, New Amsterdam Casualty Company.

'' 'Employee' means any person, including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, written or oral, express or implied.'' Section 81-1302 (b), Ark. Stats., 1947.

The record reflects that appellee, Adams, contracted with the three appellees, Improvement Districts, to develop what was called the Yellow Banks Canal Project. E. G. Green was the engineer for the Districts. Adams testified: ''Q. What compensation were you to receive to do this work? A. I was to receive an hourly pay for the dragline and an hourly pay of the two bulldozers. Q. Whom did you hire to do this job for you? A. Well, your question is hard to answer. I had a dragline operator and two bulldozer operators. * * * We got a little behind on the clearing work which is necessary in order to come through and do the digging work, and Mr. Green (district engineer) offered to bring in two tractors he used in mowing on the levee and help to do the clearing,

which he did. At the time he brought the tractors in, we discussed whether there was any compensation insurance on the tractors, on the tractor drivers, and he said no. I told him I could cover them; that I had a blanket policy. Now, when I bought his policy, Mr. Hudson (general insurance agent for the insurance carrier) told me that all that was necessary for me to do to cover a man on the insurance was to put him on the payroll and it would cost me four percent of the payroll, and I paid the policy in advance. * * * I told Mr. Green I could and would cover him (Peek) and that is all the discussion we had at the time and I told him I could cover them (Peek and Nowell) by running the payroll through my payroll. I could pay them although I wouldn't physically receive the money. That is what I said. I paid the Social Security on these boys (Peek and Nowell) and also filled out the form W-2 and carried it on my payroll. The insurance company has audited by payroll twice and accepted the money. One of them covered being E. C. Peek, Jr. I have the book here with the auditor's signature on it twice."

Mr. Green's testimony corroborated Adams and "Q. Let me ask one question. I would like to ask you this: You say you think they (meaning young Peek and another) were employees of Mr. Adams. Do you think they were employees of Mr. Adams for the purpose of bookkeeping or actual employees? A. I think they were employees carried for their protection."

Mr. Hudson, a representative of the insurance company, testified that he issued the policy here in question to John W. Adams. We quote from his testimony when being questioned by Commissioner Caperton: "Q. Would you be so kind as to explain the terms under which that policy was issued? A. You mean as to coverage under that contract? Q. Yes, sir. A. It protected him against damages done to his employees in accordance with the Workmen's Compensation Act. Q. Did the policy specify who his employees were? A. Well, we had a classification under that policy as to the kind of work he was doing. Of course, we don't state the number of his employees or who they were. * * * Q. I will ask you to state to the

Commission if you told Mr. Adams any man he placed on the payroll would be included in the policy? A. I told him whoever was included on the payroll and went to the Company I considered him covered."

The insurance policy provided: (Statement by Commissioner Caperton) "Let the record show that this is a standard Workmen's Compensation employers' liability policy issued to John W. Adams by New Amsterdam Casualty Company as an individual, policy issued March 24, 1948, to expire March 24, 1949, for the purpose of irrigation and drainage system construction, including drivers, chauffeurs, and their helpers, pile driving, dredging, tunneling or dam and sewer construction to be separately rated. Policy Number 936364."

We are not unmindful of the rule that this court must sustain the award of the Commission if it is supported by substantial evidence, but we also recognize that this rule stems from a provision of the Workmen's Compensation Act [as noted in *Herron Lumber Company* v. *Neal*, 205 Ark. 1093, 172 S. W. 2d 252] which says the award of the Commission shall be reversed if this court finds "that there was not sufficient competent evidence in the record to warrant the making of the award by the Commission."

The admitted physical facts show that Adams was in charge of a large number of men working on the canal and that the deceased was physically present and working on that job, the three drainage districts, through their agent, Green, discussed the status of the deceased and to all purposes and effects they agreed that he would be considered an employee of Adams when they agreed to put him on Adams' payroll and carry him as such.

It is undisputed that Adams had a blanket employees' policy with the New Amsterdam Casualty Company and under this policy, all that was required of Adams in order to cover any and all of his employees was to list their names on his payroll and pay insurance premiums to the Insurance Company on the basis of four percent of his payroll. Adams did list young Peek on his payroll, along with all of his other employees, and paid the pre-

mium for his coverage. The Insurance Company audited Adams' payroll with Peek's name thereon, accepted the premiums and still retains them. Adams also paid the Social Security tax on young Peek and his other employees.

We hold that there was no substantial evidence to support the Commission's finding that young Peek was not an employee of Adams and not covered by Adams' insurance carrier at the time of his injury, which resulted in his death. In other words, we hold that young Peek was Adams' employee and covered in the above insurance policy and that the Circuit Court erred in holding otherwise.

Under § 81-1315, Ark. Stats. 1947, (c) (5), the Commission's finding as to the amount of the award to Mrs. Peek was correct. Accordingly, the judgment is reversed with directions to direct the Commission to make the above award to appellant against Adams and his insurance carrier in accordance with this opinion.

.   .   .   .   .

The Chief Justice would affirm as to Adams on the ground of estoppel, but not as to the insurance carrier.

The Chief Justice dissents in part. GEORGE ROSE SMITH, J., dissents.

GEORGE ROSE SMITH, J., dissenting. I do not understand how it can be said that there is no substantial evidence supporting the Commission's finding that Peek was not an employee of Adams. On the contrary, a study of the record discloses that there is hardly any evidence to sustain the majority's declaration that Peek was Adams' employee.

Adams had a contract with the three districts by which he was to use a dragline and two bulldozers in cleaning out the drainage ditch. For this work he was paid an hourly rate for each piece of equipment; that was his only compensation. But underbrush, bushes, and trash could best be removed by tractors and common labor. Adams not being equipped for that type of work, the districts agreed in advance that they would do this preliminary

cleaning at their own expense. On that understanding the districts sent two tractors and some common laborers to do the work that Adams could not do and had not agreed to do.

Whether Peek thereby became an employee of Adams depends upon whether Peek's activities were under the control of Adams or of the districts. Testimony that is virtually undisputed shows that control lay with the districts. George Nowell, the other tractor driver, who had the same duties as Peek had, testified that he was working under Wilkes, the district's engineer, and took his orders from Wilkes. Nowell went to and from work in the districts' truck. He was paid by Wilkes, and it was Wilkes that he tried to please. Nowell testified that he had nothing to do with the dragline and bulldozers, and he did not even know that Adams was in charge of that equipment.

Adams testified that he did not pay the tractor drivers; all he did was to show them on his payroll for insurance purposes. He testified that the clearing of underbrush "was the job of the three districts, under Mr. Green's and Mr. Wilkes' supervision." There is not a word in Adams testimony to indicate that he ever supervised the tractor drivers or had the authority to do so.

E. O. Green, another engineer for the districts, testified that Peek was regularly employed by them. Adams had nothing to do with Peek's salary; the districts merely informed Adams of the amount each week and reimbursed Adams for insurance premiums, social security payments, etc. Green testified that there was no connection between Adams' contract and the two tractor drivers. He further testified that Adams' own men, on his dragline and bulldozers, were the only ones that Adams had control over.

The evidence of these three witnesses is not disputed and amply supports the Commission's finding that Peek was not Adams' employee. In disregarding all this testimony the majority stress only the fact that Adams had a blanket policy and went through the sham of carrying Peek on his payroll. Apart from the fact that the insurance agent testified that there was no agreement that the

policy would cover any one except Adams' own employees, it is evidently immaterial that the insurer accepted premiums and audited the account in ignorance of what was being done. For the insurer's liability is not primary; it is secondary or derivative. Under the compensation law the insurer is merely required to guarantee that the employer's primary liability will be satisfied. If the employer-employee relationship does not exist, as it did not here, then it is obvious that the very basis of the insurer's secondary liability is wanting. And the majority seem to concede this fact, since their conclusion is reached by finding that Peek was employed by Adams.

I regret that I cannot express more strongly my disagreement with the majority's action in this case. We know from this record and many earlier ones that the members of the Commission are conscientious and painstaking in the performance of their duties. I do not see how we can expect the commissioners to take their responsibility seriously if their carefully reached conclusions are to be so lightly overturned by this court.