AMERICAN MUTUAL
LIABILITY INSURANCE COMPANY
*v.* ROCKWOOD INSURANCE CO.
Larry SLAUGHTER, Chester ANDERSON,
Lennox NORRIS and Jerry OWENS

CA 80-193                                    608 S.W. 2d 24
Court of Appeals of Arkansas
Opinion delivered November 19, 1980
[Rehearing denied December 17, 1981.]

*Penix, Penix & Mixon*, for appellant.

*Spencer, Spencer & Shepherd* and *Shackleford, Shackleford & Phillips,* for appellee and cross-appellants.

JAMES H. PILKINTON, Judge. Larry Slaughter, d/b/a Ark-La Wood Company of Junction City, Arkansas, is engaged in the business of procuring and selling pulpwood. He owns three pulpwood yards — one at Stamps in Lafayette County, one at Village in Columbia County, and the third at Junction City in Union County.

Prior to 1975, all three locations were covered under one workers' compensation insurance policy issued to Mr. Slaughter. Slaughter's employees included the woodyard employees and drivers, surveyors and clerical workers. Slaughter had only one logging crew, and the persons working on this sole logging crew were also covered under Mr. Slaughter's workers' compensation insurance policy.

In addition to the regular wage employees of Slaughter, there were many independent contractors who produced, sold and delivered pulpwood to the three woodyards. The record shows there were twelve to twenty-two such independent contractors bringing pulpwood into the Village yard; approximately the same number at Stamps; and twenty-five to thirty-five such contractors hauling pulpwood into the Junction City yard. It is undisputed that these were independent contractors, or subcontractors, who had their own equipment ran their own operations, hired and fired their own employees, and merely produced, sold and delivered wood to one of the several woodyards. Under Ark. Stat. Ann. § 81-1306 (Repl. 1976), the prime contractor is liable for workers' compensation benefits to the employees of an independent subcontractor where the subcontractor fails to secure the compensation insurance coverage required by the Arkansas act.

Due to the number of injuries suffered, an insurance "modifier" had been included in Slaughter's premium rate, making his rate unusually high. The coverage at that time was with Bituminous Insurance Company and, in connection

with attempting to work out a safety program to reduce injuries, the safety director at Bituminous suggested to Slaughter and his independent insurance agent, Lawrence H. Derby of Warren, Arkansas, that a separate policy be obtained for each location. Slaughter and Derby were told that if Slaughter would make his manager at each yard prime contractors, and let them be responsible for the insurance, and assume other duties, including the obtaining of the pulpwood at each yard, then the prime contractor at each yard would become a separate risk from Slaughter's risk on his wage employees, and thus there would be a savings on premiums. Slaughter followed this suggestion, and through Derby four separate policies were applied for and issued by Bituminous in 1976: (1) to Larry Slaughter, d/b/a Ark-La Wood, covering all of Slaughter's wage employees as had been the cause previously; (2) to Chester Anderson covering only the wood haulers and their employees, delivering wood to the yard at Village; (3) to Jerry Owens covering only the wood haulers and their employees, delivering wood to the yard at Stamps; and (4) to Lennox Norris covering only the wood haulers and their employees who delivered wood to the yard at Junction City.

As Anderson, Owens and Norris were without any experience rating, their premiums were the standard rate, unblemished by claims for previous injuries by employees or contractors. Thus the three latter separate policies were written at a lower rate than Slaughter's policy.

Bituminous Insurance Company quit writing workers' compensation insurance in Arkansas after 1975. Derby then obtained four policies from Rockwood Insurance Company for the year November 7, 1976 to November 7, 1977. After the first policy year, Rockwood renewed the policies issued to Larry Slaughter and Chester Anderson. Jerry Owens and Lennox Norris were rejected as unacceptable risks because of excessive injuries and claims. Consequently Derby applied for coverage of Lennox Norris and Jerry Owens to the Arkansas Compensation Rating Bureau, which makes random assignments of rejected risks to companies in the "pool". Norris was assigned to American Mutual Liberty Insurance Company. By luck of the draw, Jerry Owens was assigned to

Rockwood which had previously rejected him. Because of the regulations, Rockwood had to accept Owens, and American Mutual insured Norris. A routine audit, conducted by Rockwood after the second year, revealed that Larry Slaughter owned all three yards. The extent of his control, if any, over the procurement of wood and over the wood haulers and their employees covered by the Anderson, Owens and Norris policies is a disputed question of fact.

Rockwood filed this suit and sought reformation of its policies to all three — Slaughter, Anderson and Owens — for the periods of its coverage. Rockwood claimed as grounds for relief that there had been a failure to disclose the true nature of the business relationship existing between Slaughter on the one hand, and Anderson, Norris and Owens on the other. The reformation sought was the inclusion of the experience modifier to each policy, and the total added premium dollar claimed to be due to Rockwood from Slaughter was $9,-212.05.

American Mutual Liberty Insurance Company was brought into the case for a declaration of liability under the policy issued by American Mutual to Norris for the period covering November, 1977 to November, 1978. It was alleged that American has liability for workers' compensation benefits under its policy to independent haulers and their employees delivering pulpwood and logs to the Junction City woodyard operated by Norris. American Mutual Liberty denied liability, and sought cancellation of its policy on the basis of fraud.

Following a trial on the merits, the chancellor found, and a chancery decree was entered, holding:

(1) That each individual defendant, (Slaughter, Anderson, Norris and Owens) had risk exposures and properly had policies of insurance issued to them to cover such exposure;

(2) That AMLIC was not entitled to a rescission of its policy of workers' compensation insurance issued to Lennox Norris;

(3) That Rockwood was not entitled to a reformation of · its workers' compensation insurance policies to include Slaughter's experience modifier; and

(4) That Slaughter was entitled to judgment of and from Rockwood in the amount of $35,711.09.

American Mutual Liberty Insurance Company has taken an appeal from the decree; Rockwood has taken a cross-appeal; and Slaughter, Anderson, Norris and Owens have cross-appealed only to insure that if American Liberty was successful, Rockwood would be required to cover any liability of Slaughter as a statutory employer under Ark. Stat. Ann. § 81-1306.

I

American Mutual first contends that the findings of the chancellor that Lennox Norris was a separate risk is against the preponderance of the evidence. American Mutual thus argues that in order for Lennox Norris to have risk exposure he must be an employer within the meaning of the Arkansas Workers' Compensation Act. The evidence shows that Slaughter's woodyard in Junction City operated pursuant to a contract with Georgia Pacific. For a stipulated price per cord of wood delivered, Slaughter agreed to arrange for the purchasing, cutting and delivering of wood to the premises of Georgia Pacific. The employees of Slaughter, who were paid by the hour, posed no problem relative to entitlement to workers' compensation. However "haulers" and their employees posed an entirely different problem. See *Stephens and Stephens* v. *Logan et al*, 260 Ark. 78, 538 S.W. 2d 516 (1976).

Slaughter's woodyard at Junction City was operated by Norris; his woodyard at Village was operated by Anderson; and his woodyard at Stamps was operated by Owens. The evidence shows that these three individuals were not merely employees of Slaughter; they also served Slaughter as contractors. In addition to their salary as employees, each manager was paid an incentive bonus in his capacity as a contractor for Slaughter. Each was individually responsible

to make the required quota by obtaining the wood to be brought into the yard managed by him. Each manager was responsible for a safety program; each was responsible to maintain the insurance program for the independent haulers and their employees, to see that all injuries were reported, and to keep a check on injured claimants. Each was responsible for carrying workers' compensation insurance to protect against the statutory liability for haulers and their employees.

As already noted, Section 6 (Ark. Stat. Ann. § 81-1306) provides that where a subcontractor fails to secure compensation (i.e., purchase the policy of workers' compensation insurance or qualify as a self-insurer) then the prime contractor shall be liable for compensation to the employees of the subcontractor. The evidence clearly shows that Norris was a prime contractor for Slaughter, within the meaning of Section 6, *supra*, and that Norris subcontracted a portion of that contract, i.e., the cutting and hauling of wood to the Junction City woodyard, to these haulers. The employees of the haulers therefore fell squarely within the provisions of Section 6, *supra*. We are not concerned here with an employer and employee in the usual case. There are injured persons who are entitled to benefits from persons or entities other than their employer. For instance, there is a "statutory employee" as provided by Section 6, *supra*. The statutory employee is entitled to benefits, and this right does not depend upon the employee relationship with an employer as defined by the Act.

This court will not disturb the chancellor's findings on issues of fact unless clearly against the preponderance of the evidence. *Newberry* v. *McClaren*, 264 Ark. 735, 575 S.W. 2d 438 (1978). While chancery cases are heard de novo by the appellate court, a chancery court decree will not be reversed where there is a disputed question of fact unless the findings are clearly against the preponderance of the evidence. We cannot say on this record that the finding of the chancellor that Lennox Norris was a separate risk is clearly erroneous (clearly against the preponderance of the evidence).

## II

American Mutual next argues that it is entitled to rescis-

sion of this contract of insurance, and that the chancery court erred in denying that relief. We do not agree. As we view the record, American Mutual is in no position now to question the validity of the policy it issued to Norris. The evidence shows that as early as May 15, 1978, American Mutual knew there was a relationship between Slaughter and Norris. This relationship came to American Mutual's attention by a report prepared by Mr. C. P. McConnell, of American's Little Rock claim office, in connection with a claim of a person named Jimmy Ford under the Lennox Norris policy. The record is clear that American Mutual thereafter accepted premiums under its policy based upon an "upset" payroll of $3.40 per cord with knowledge that Slaughter owned all three yards. By so doing, American waived any right it may have had to question the validity and effect of the insurance contract. *Continental Insurance Companies* v. *Stanley*, 263 Ark. 638, 569 S.W. 2d 653 (1978); *Stephens* and *Stephens* v. *Logan*, *supra*. Notwithstanding the McConnell report dated May 15, 1978, showing the relationship between Slaughter and Norris, American Mutual continued to adjust and pay claims on behalf of its assured, Norris. The evidence shows that of the thirty claims paid on behalf of the insured, Lennox Norris, thirteen were paid after May 15, 1978. This action of the company is not consistent with its claimed right to rescind. *Continental Insurance Companies* v. *Stanley, supra*. It follows that American Mutual cannot be heard at this time to seek rescission of this contract of insurance, and that the chancery court correctly denied this relief. We have concluded that this case must be affirmed on direct appeal. The cross-appeal of Slaughter, Anderson, Owens and Norris therefore becomes moot.

## III

On its cross-appeal Rockwood seeks to reform five insurance policies so as to substantially increase the premiums charged. The chancellor denied the reformation, and we hold that he was correct in so doing. In the first place, Rockwood carried the burden of proof to show by clear, cogent, convincing and decisive evidence that these policies were issued under a mistake of fact, induced by fraud or inequitable con-

duct. We agree with the chancellor the evidence here fails to meet that test. The only contact Rockwood had with the appellees was through Lawrence H. Derby. The record shows that Derby called Emma Armstrong, the general agent for Rockwood in Arkansas, and if Rockwood was misled or defrauded it could only have been through Derby. The record shows that Derby submitted the applications and the experience data on all concerned; and Derby was required to personally guarantee the premiums in writing. Mrs. Armstrong had never met Anderson, Owens or Norris. She admits in her testimony that she made no inquiry as to who they were, and in fact made no check at all on them. Her testimony and actions are consistent with Mr. Derby's version of the matter. Mr. Derby testified that he gave Mrs. Armstrong complete information in regard to the risks. The chancellor found in effect that the evidence showed a full disclosure of the relationship between Slaughter, Norris, Owens and Anderson, and we cannot say on this record that such decision is erroneous. Completely lacking is any clear, cogent, convincing and decisive evidence of fraud, inequitable conduct or mistake.

It is also admitted by Rockwood that the policies issued by it to Anderson, Owens and Norris had no endorsement or other provision authorizing an experience modifier. Rockwood admits that a premium is settled at the time the policy is issued. The premiums were definitely stated in the policies as issued and, under the circumstances here, we hold that the chancellor was correct in concluding that Rockwood can only collect the premiums agreed upon.

Affirmed on direct and cross-appeals.

PENIX, J., not participating.

WARREN WOOD, Special Judge, participated in this decision.