Cite as 2020 Ark. App. 188

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-19-631

| | |
|---|---|
| JOHN M. DAVIS<br>APPELLANT<br><br>V.<br><br>ED HICKMAN, P.A., AND<br>TRAVELERS INSURANCE CO.<br>APPELLEES | **Opinion Delivered** March 18, 2020<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G602637]<br><br><br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

John Davis sustained permanent injuries on 7 October 2015 in a motor-vehicle collision. At the time, Davis was working as a physical therapist making home patient visits for Ed Hickman P.A. His claim for workers'-compensation benefits before the administrative law judge was disputed by Hickman, P.A. and its insurance carrier, Travelers Insurance. They argued that Davis was an independent contractor, not an employee of Hickman, P.A. when the injury occurred. When the hearing convened on Davis's compensation claim, he testified that he could not remember the 2015 collision, that he had attended college, or that he had been a physical therapist for years. Because he suffered a brain injury, Davis needed support when performing his daily activities. The parties stipulated that "if compensable [Davis] would be entitled to the maximum compensation rate."

The Commission adopted the law judge's opinion and found that Davis was an independent contractor; therefore, he was not entitled to any benefits. Davis appeals, arguing that the Commission's decision is unfair and bad public policy (in essence).

I. *The Commission's Decision that Davis Was an Independent Contractor, Not an Employee*

We review the Commission's conclusion that Davis was an independent contractor under the substantial-evidence standard of review. *Farrell-Cooper Lumber Co. v. Mason*, 216 Ark. 797, 798, 227 S.W.2d 444, 445 (1950).

When injured, Davis was approximately fifty years old and a licensed physical therapist who provided in-home physical-therapy services for Ed Hickman, P.A. Ed Hickman testified that he owns the business entity and that he had worked with Davis since 1992. Hickman provided some equipment to Davis to use during his in-home patient visits—which included, among other things, an Android device used to make notes for medical records, "Therabands," and ultrasound equipment. In 2007, Davis signed a written contract to provide physical-therapy services for Hickman, P.A., for which he was paid on a "per patient" basis. The contract stated that "the parties entered into this Agreement as independent contractors, and nothing contained in this Agreement will be construed to create a[n] . . . employment relationship[.]" The agreement required Davis to carry a minimum amount of professional-liability and automobile-liability insurance and to indemnify Hickman, P.A.

Hickman, P.A. provided rehabilitation services to patients in or near Fort Smith, Arkansas, and around eastern Oklahoma. In 2010, Davis signed a notarized "Affidavit of Exempt Status Under the Workers' Compensation Act," a legal paper wherein Davis

2

acknowledged that he was an independent contractor for workers'-compensation purposes. *See Unique Painting & Remodeling v. Porterfield*, 296 P.3d 513, 515 (Okla. Civ. App. 2012). Ed Hickman testified that at some point, his contractors were audited in Oklahoma, and Oklahoma said that it would no longer recognize or honor contract therapists of Hickman, P.A. as being independent contractors. As a result, Hickman "ended up having to pay workers' compensation coverage in Oklahoma." Hickman responded this way to some questions asked of him during the administrative hearing.

| | |
|---|---|
| DAVIS'S ATTORNEY: | And at some point in time an audit was performed with respect to Arkansas employees? |
| HICKMAN : | That is correct. |
| DAVIS'S ATTORNEY: | And that carrier [Travelers] ended up requiring you to cover all of these people despite the paperwork? |
| HICKMAN: | That is correct. |
| DAVIS'S ATTORNEY: | And your protest otherwise? |
| HICKMAN: | Yes. |
| DAVIS'S ATTORNEY: | But you still consider them independent contractors, the physical therapists? |
| HICKMAN: | In my mind I do. |
| DAVIS'S ATTORNEY: | Okay. |
| HICKMAN: | In my pocketbook, I don't. |
| DAVIS'S ATTORNEY: | Are you taking withholdings at this particular point in time? |
| HICKMAN: | No. |

. . . .

3

| | |
|---|---|
| DAVIS'S ATTORNEY: | Now, there was some talk about worker's compensation premiums. In your deposition, I believe you indicated that you actually paid for a workers' compensation insurance policy covering December of 2014 through December of 2015; is that correct? |
| HICKMAN: | It actually started in June of 2014 when the agency required me to get a policy. And then that was paid through that year and then the next year was a new policy starting January 2015 through December 2016. |
| DAVIS'S ATTORNEY: | And how much did you have to pay for that policy? |
| HICKMAN: | The initial one when I thought I only had Oklahoma workmen's comp was $6,000. Then when Travelers came in and did their audit, they came back and I had to pay a balance bill of I think it was 4,000 to 4,016 in my head. |
| DAVIS'S ATTORNEY: | So once you paid that total of $10,000, you had workers' compensation coverage for your Arkansas people and your Oklahoma people; is that right? |
| HICKMAN: | That is correct. |
| DAVIS'S ATTORNEY: | And in your mind, what does paying that money entitle you to? |
| HICKMAN: | I feel that I have coverage for my contract therapists because I was forced to pay it by someone, not by me. |
| DAVIS'S ATTORNEY: | Regardless of any contract that started back in 2006 or regardless of what their service to your company is, as a result of you paying thousands of dollars of premiums, you believe your people ought to be covered; is that right or wrong? |
| HICKMAN: | Yes. |

4

DAVIS'S ATTORNEY:    That is correct?

HICKMAN:    That is correct.

During his November 2016 deposition, which was included in the record, Davis's attorney asked Hickman the following questions.

DAVIS'S ATTORNEY:    Let's go back to this insurance coverage. You had this meeting with your agent and the Oklahoma people got covered and then later you had a meeting that required you to do payments for retroactive coverage. Did you have any choice in whether or not you wanted to exempt some of your people from coverage or were you just basically told they have all got to be covered and here's what you've to go pay?

HICKMAN:    Basically the person that came in did the audit, just sent me a deal saying that they all had to be covered and this is the premium notice to catch it up through this date.

DAVIS'S ATTORNEY:    Was it your understanding that as a result of you paying that premium that everybody that worked for you was covered under your workers' compensation insurance policy?

HICKMAN:    Yes, because it was based on their salary per hundred dollars I had paid them, so the premium was based on what I had paid them.

DAVIS'S ATTORNEY:    Was your agent made aware of what your relationship was between you and the people who worked for you? I mean, did you explain all of that to them?

HICKMAN:    Yes.

DAVIS'S ATTORNEY:    So your agent would have been aware of the relationship and, of course, as you indicated, would have been aware of the actual dollars that you paid in determining or in forwarding that

> information to the carrier for them to make a determination about your premium?

HICKMAN: Yes, because the carrier actually sent that information back to them.

During the deposition, Hickman also stated, "I actually called [Davis's] significant other and told her that, you know, that it was my understanding that I had workmen's compensation at that time and he needed to file a claim for that because that's what the Travelers Insurance had informed me that all of my people in Arkansas were covered." He also stated, "I paid premium for every dollar that I had to Arkansas and Oklahoma therapists for the year that like 2015 January all through December and, yes, it happened in October, so I was under the impression that that would be covered."

The evidence showed that Hickman, P.A. paid Davis as an independent contractor, not as an employee. The Commission concluded that Davis's 2010–15 state and federal income tax returns show that Hickman, P.A. paid Davis as an independent contractor using a 1099-MISC form; that Davis reported the income from Hickman, P.A. as business income on his personal returns; that Davis deducted various transportation costs as business expenses; and that he paid self-employment taxes on income received from Hickman, P.A.

No one disputed that Hickman, P.A. paid Davis on a flat-rate, per patient basis. There was, however, a dispute over scheduling. Ed Hickman testified that he did not know which patients Davis would see, that Davis determined which patients to see, and that Davis could work for any other hospital or clinic—if it was not an entity with which Hickman already had an existing contract. Hickman said that Medicare established certain deadlines,

6

and his wife, Sara, would prompt the therapists to submit their medical notes so they would be paid.

Tasha Wilson, Davis's longtime girlfriend, testified that Sara regularly sent Davis messages about his job performance, what work was supposed to be completed, and when certain documents had to be submitted. According to Wilson, Hickman assigned Davis and other therapists to weekend-call rotations. "[Hickman] assigned [Davis] his patients and they all had to be seen within a certain amount of time and that is how that worked."

The Commission resolved this factual dispute in Hickman's favor. It found that Davis had sole control over the plan of care provided to a patient and how to implement it, including the order in which Davis saw his patients. It further found that Davis could work for other companies and that he had worked for a hospital while also performing services for Hickman, P.A. The opinion also states:

> [T]here was some testimony and documentary evidence presented in the form of text messages regarding various reports [Davis] needed to supply [Hickman, P.A.,]. However, these reports were for billing purposes so that [Hickman, P.A.] could be paid by a particular agency and [Davis] in turn could be paid his per patient fee. These reports were due within a certain number of days in order for payment to be processed. They are not evidence that [Hickman, P.A.,] was controlling claimant's work performance.

There was also, as we have noted, evidence that Hickman, P.A. carried workers'-compensation coverage on Davis and the other "independent contractors" it hired in western Arkansas and eastern Oklahoma. In his brief to the Commission, Davis argued:

> Since ACA § 11-9-401(b) provides that the primary obligation to pay compensation is upon the employer, the carrier in this case has waived any right that it might have had to object to the Claimant being covered when the carrier has made a determination that the Claimant was an employee, required Ed Hickman, P.A. to pay premiums based partially on wages that were paid to the Claimant and issued a policy of insurance covering the period

7

of time during which Claimant was injured. Ed Hickman, P.A. relied upon the representations of Travelers and paid thousands of dollars in premiums in order to obtain coverage for his therapist; therefore, it would be against good public policy to now allow the very carrier who wrote the policy and received the premiums to assert that one of the people whose earnings they considered in setting the premiums is really not covered. Thus, in addition to waiver causing the Respondent/Carrier not to have standing to litigate this issue, they are also estopped from litigating the issue since Hickman relied on Travelers' representation that his therapists were employees, and to his detriment, paid thousands of dollars in insurance premiums.

The Commission (adopting the law judge's opinion) rejected Davis's argument that Travelers was estopped from denying coverage because it had collected insurance premiums from Hickman, P.A.

> Claimant contends that the payment of those premiums operated as an estoppel for respondent's argument that claimant was an independent contractor; constitutes a waiver of the argument that claimant was an independent contractor; and constitutes an admission against interest on the part of Travelers, the compensation carrier.

> First, I do not find that the doctrine of estoppel is applicable to this case. The elements of estoppel are as follows: (1) the party to be estopped must know the facts; (2) he or she must intend that their conduct will be acted upon or must act so that the party asserting the estoppel has the right to believe that the other party so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely upon the other party's conduct to his or her injury. Here, since claimant is claiming the doctrine of estoppel, he must prove that he relied in good faith on wrongful conduct and changed his position to his detriment. Claimant did not provide any proof that he relied upon any conduct of Travelers or that he changed his position to his detriment based upon any action taken by Travelers. Absent that proof, the doctrine of estoppel is not applicable.

> Likewise, I do not find that the respondent carrier waived its argument that claimant was an independent contractor. As respondent correctly points out in its brief, a waiver is a voluntary abandonment or surrender of a right known to exist with the intent that he shall be forever deprived of its benefits. *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999). There is no evidence in this case that the respondent voluntarily abandoned its right to contend that claimant was an independent contractor. As respondent notes in its brief, Travelers cannot

8

accurately predict whether or not a person will be determined to be an employee or an independent contractor.

Finally, I do not find that Travelers' collection of a premium constituted an admission against interest on the part of respondent. First, as respondent correctly notes in its brief, the payment of the premium in this particular case did not occur until after claimant's injury according to the deposition testimony of Edward Hickman. Furthermore, I note that whether or not Travelers collected a premium on the claimant is not evidence of the employment relationship which existed between claimant and the respondent. The determination of whether claimant is an independent contractor or an employee is to be determined by the Commission based upon the relevant factors which were previously discussed. It is not determined by the relationship between a compensation carrier and an employer. Certainly, one would not argue that if a premium was not collected in this case that that would constitute evidence that claimant was not an employee.

Accordingly, I do not find that the collection of the premium in this case constituted an admission against interest by Travelers.

II. *Substantial Evidence Supports the Commission's Decision that Davis Was an Independent Contractor, Not an Employee*

In workers'-compensation law, an independent contractor is "one who contracts to do a job according to his or her own method and without being subject to the control of the other party, except as to the result of the work." *Brookshire Grocery Co. v. Morgan*, 2018 Ark. 62, at 8, 539 S.W.3d 574, 579. There is no fixed method by which to determine whether a person is an employee or an independent contractor. *Id.* Our supreme court has, however, identified some factors to "guide the court's inquiry." *Id.* at 8, 530 S.W.3d at 579. They are:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

9

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether the work is a part of the regular business of the employer;

(i) whether the parties believe they are creating the relation of master and servant; and

(j) whether the principal is in the same business as the alleged independent contractor.

*Id.*

Although not listed above, caselaw from our supreme court holds that an employer paying a carrier for compensation insurance on a worker is a "circumstance to be considered" when deciding whether the worker is an employee or independent contractor. *Farrell-Cooper Lumber Co. v. Mason*, 216 Ark. 797, 801, 227 S.W.2d 444, 447 (1950); *but see Peek v. Adams*, 219 Ark. 540, 243 S.W.2d 562 (1951); *Stillman v. Jim Walter Corp.*, 236 Ark. 808, 368 S.W.2d 270 (1963); *Am. Mut. Liab. Ins. Co. v. Rockwood Ins. Co.*, 271 Ark. 167, 608 S.W.2d 24 (Ark. App. 1980).

Moreover, in *Voss v. Ward's Pulpwood Yard*, 248 Ark. 465, 452 S.W.2d 629 (1970), our supreme court held that an injured worker was an independent contractor although the company who hired him had paid on an insurance policy to cover the worker. During the administrative hearing, the employer said that he thought the claimant (worker Voss) was

10

an independent contractor. The employer's insurance carrier was never made aware that Voss was considered an independent contractor. But the carrier had, in fact, previously paid Voss workers'-compensation benefits for a prior injury. *Id*. at 467, 452 S.W.2d at 631. Voss subsequently died from a heart attack while operating his own truck as a subcontractor for Ward. A contract existed between Ward and Voss. Ward paid Voss by the job for each cord of wood cut, hauled, and delivered. Ward was contractually obligated to pay its carrier a workers'-compensation policy premium. The premium was based on the "annual remuneration" the employer paid to "persons engaged in" hauling wood. *Id*. at 468, 452 S.W.2d at 631. The parties agreed that Voss was a person engaged in hauling wood and that he was included in Ward's annual payroll, the payroll from which Ward's coverage premium was calculated. The Commission held, and our supreme court agreed, that Voss was an independent contractor and that the carrier was not estopped from denying benefits although it had previously paid them to Voss as an employee of Ward's business. It did not ultimately matter that the employer's insurance premium was calculated using Voss's earnings. The supreme court rejected Voss's argument that the carrier had to pay benefits because Voss was included in the payroll used to calculate the employer's workers'-compensation premiums and because Voss had previously received benefits. *Id*.

Davis makes a forceful policy argument. And we understand why he makes it. But the Arkansas Supreme Court's opinion in *Voss* prevents us from agreeing with Davis on this point. According to *Voss*, an employer who pays workers'-compensation insurance premiums for a worker is one relevant factor, among others, that the law judge and the Commission can use when deciding whether a claimant is an independent contractor or an

11

employee. *Voss* teaches that although Davis's earnings were included in the amount Travelers used to calculate Hickman, P.A.'s, compensation premiums, that fact alone does not answer the independent-contractor versus employee question. *See Voss*, *supra*; *Farrell-Cooper Lumber Co.*, *supra*; *Franklin v. Ark. Kraft, Inc.*, 12 Ark. App. 66, 70, 670 S.W.2d 815, 818 (1984) (the employer's method of calculating workers'-compensation insurance premiums did not prevent the employer from asserting that the claimant was an independent contractor).

Other states have statutes that prevent an insurance carrier from denying coverage to a worker when an employer pays insurance premiums. *E.g.*, Miss. Code Ann. § 71-3-79; Ga. Code Ann. § 34-9-124. Arkansas does not. And some state courts, in some situations, have implied coverage when a contract between an insurance carrier and an employer expressly notes that a person is to be insured. *Superior Ins. Co. v. Kling*, 327 S.W.2d 422 (Tex. 1959); *see also Tri-Union Express v. Workers' Comp. App. Bd.*, 703 A.2d 558 (Pa. 1997) (carrier was estopped from denying that an employer/employee relationship existed, because employer's agent had told the claimant that he would be covered by workers' compensation insurance and employer had paid premiums to carrier).

The Arkansas's Workers' Compensation Act is a creature of statute. *Curry v. Franklin Elec.*, 32 Ark. App. 168, 172, 798 S.W.2d 130, 132 (1990). The General Assembly, not the courts, declares this state's public policy, and it does so through its statutes. *Med. Liab. Mut. Ins. Co. v. Alan Curtis Enter., Inc.*, 373 Ark. 525, 529, 285 S.W.3d 233, 237 (2008).

Having acknowledged Davis's point that "unless Travelers considered Ed Hickman P.A. to be an employer with employees there would have been no legitimate reason for

Travelers to have sold Ed Hickman P.A. a workers' compensation insurance policy," we are constrained by *Voss*. Either the General Assembly or our supreme court will have to change the law on this issue if it is to be changed. This court cannot do so.

We hold that whether Hickman paid Travelers for a workers'-compensation policy that purportedly included Davis is but one factor to weigh among the others when deciding whether he was covered by a compensation policy. And having considered the entire record while applying the standard of review, we also hold that the Commission did not err in finding that Davis was an independent contractor. Consequently, the Commission's opinion is affirmed.

Affirmed.

GRUBER, C.J., and WHITEAKER, J., agree.

*Walker & Harp, PLLC*, by: *Eddie H. Walker, Jr.*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *Phillip M. Brick, Jr.*, for appellee.

13