310 S.W.2d 248 (1958)
In the Matter of the ESTATE OF Robert THOMAS, Deceased.
Walter H. THOMAS, Appellant,
v.
Costella BARNETT, Appellee (two cases).
Nos. 5-1384, 5-1488.
Supreme Court of Arkansas.
February 10, 1958.
Rehearing Denied March 17, 1958.
*249 Coleman, Gantt & Ramsay, Pine Bluff, for appellant.
Wiley A. Branton, Pine Bluff, for appellee.
HOLT, Justice.
These two companion cases have been consolidated for hearing before this court.

Case No. 1384
Robert Thomas, a Negro about 80 years of age, died in Jefferson County in May 1956. Walter Thomas claiming to be a cousin and sole heir at law of the deceased, caused an administrator of his estate to be appointed. Four days later Costella Thomas Barnett (appellee) filed her petition in objection to the appointment of the administrator and sought determination of heirship to Robert Thomas' estate under provisions of Sec. 62-2914, Ark.Stats.1947, alleging that she was the daughter and sole heir at law of the deceased, Robert Thomas. Appellant, Walter H. Thomas (and the administrator) filed separate responses in which they denied that appellee was a daughter of the decedent and appellant prayed that he be declared decedent's sole heir.
Upon a trial the court, on December 4, 1956, found and adjudged that Costella Barnett, appellee, was the legitimate daughter and sole heir of Robert Thomas and entitled to the distribution of his estate as the sole heir at law, and further found that Walter H. Thomas, appellant, had failed to establish that he was an heir. This appeal followed.
The testimony disclosed that appellee was born July 30, 1915 to Mahalia Turrentine, while Mahalia was married to and living with Ralph Turrentine. The presumption, therefore, is, although a rebuttable one, that Costella was a legitimate child of Ralph Turrentine. She claimed, however, that she was the illegitimate child of Robert Thomas. Turrentine filed suit for a divorce from appellee's mother, some few days before appellee's birth, in which he alleged that he was past 70 years of age and his wife about 28, that she had deserted him and was pregnant by another man and that he had had nothing to do with her for twelve months prior thereto. A divorce was granted to Turrentine August 28, 1915, after appellee's birth, and on March 6, 1917 appellee's mother married decedent, Robert Thomas.
In further support of appellee's claim of illegitimacy, over the objection of appellant, she offered the deposition of her mother, in which her mother stated that she married Turrentine September 14, 1911 and that he divorced her in August 1915; that she married Robert Thomas, the decedent, March 4, 1917 and that one child was born to her by Robert Thomas, Costella Thomas, the appellee. That the child was born to her before she married Robert Thomas and while she was still married to Turrentine and that Costella was one year and seven months old when she married Robert Thomas and that he always acknowledged the child to be his; that Costella lived in the house of Robert Thomas until she married at the age of 18 and that she always *250 went under the name of Thomas. She further testified that Robert Thomas acknowledged that Costella was his child at the time of her birth and took care of her. Appellant contends that appellee was born while her mother was married to Ralph Turrentine, and, therefore, the presumption would be that appellee was the legitimate daughter of Ralph Turrentine. In order to overcome this presumption appellee relied strongly upon the allegations in Turrentine's cause for a divorce in 1915 and the above testimony of appellee's mother, Mahalia. At the outset appellee was under the heavy burden of overcoming a presumption of legitimacy, one of the strongest known to the law, that a child born in wedlock is legitimate and this presumption continues until overcome by the clearest evidence that the husband was impotent or without access to his wife. We have adhered to this rule throughout our decisions. As indicated, it is undisputed that appellee here was born while her mother was married to and living with Ralph Turrentine.
"There is a well recognized presumption that children born to a couple lawfully married are the children of the husband. We have held that this is one of the strongest presumptions known to the law and that it continues until overcome by the clearest evidence that the husband was impotent or without access to his wife," West v. King, 222 Ark. 809, 262 S.W.2d 897, 898. There is no showing that Turrentine was impotent. "Generally, neither husband nor wife is permitted to bastardize a child born in lawful wedlock by testifying to their own nonaccess with one another," 97 C.J.S. Witnesses § 90, p. 487 and in a footnote on page 488, "No rule of evidence is better settled than that husband and wife are alike incompetent witnesses to prove the fact of nonaccess while they lived together." Without this testimony of appellee's mother, we hold that appellee has fallen far short of showing nonaccess of her mother to Turrentine, her mother's husband at that time. This testimony of appellee's mother was incompetent, in so far as it might tend to show nonaccess to her husband Turrentine.
"In the absence of a statute in express words making the mother competent to testify to the nonaccess of her husband, we hold that she can not do so," Kennedy v. State, 117 Ark. 113, 173 S.W. 842, 843, L.R.A.1916B, 1052. It does not appear that we have any such statute in Arkansas. "This court is committed to the so-called Lord Mansfield rule to the effect that a husband or wife is incompetent to testify as to the husband's non-access in affiliation proceedings where such testimony would tend to prove a child conceived after marriage to be illegitimate. Even in bastardy proceedings where the statute Ark.Stats. § 34-712, makes the mother a competent witness, this court has consistently applied the rule and excluded such evidence on the grounds of decency, morality, and public policy. In Liles v. State ex rel. Johnson, 117 Ark. 408, 174 S.W. 1196, the mother was permitted to testify that she had not cohabited with her husband for more than four years at the time the defendant had sexual intercourse with her. This court held such testimony inadmissible and so prejudicial as to call for a reversal of the case. See also, Kennedy v. State, 117 Ark. 113, 173 S.W. 842, L.R.A.1916B, 1052; Scott v. State, 173 Ark. 625, 292 S.W. 979. We reaffirmed the rule in the recent case of Shatford v. Shatford, 214 Ark. 612, 217 S.W.2d 917." Reed v. State, 222 Ark. 119, 120, 257 S.W.2d 362, 363, 38 A.L.R.2d 567.
There was other evidence that decedent recognized appellee as his daughter, and evidence to the contrary, however, after examining it all, we think the great preponderance, if not all, fails to show nonaccess of Turrentine to his wife, Mahalia.
As to the appellant's claim that he was the sole heir, as the cousin of decedent, we hold that the finding of the trial court against him, was not against the preponderance of the evidence. It appears that appellant first met the decedent in 1951 or *251 1952, and except what he claims decedent told him he produced no other evidence that he was decedent's cousin, and heir.
Reversed.

Case No. 1488
Following the judgment (December 4, 1956) in Case No. 1384 above, appellant on February 20, 1957, filed this second suit which is a companion suit and between the same parties and involving the same estate. He sought in his petition to have a certain written instrument, dated December 28, 1951, admitted to probate as the last will of Robert T. Thomas. Appellee, Costella Barnett, contested the petition on two grounds; (1) first, that it was a forgery and second, (2) that appellant's proof was not sufficient to sustain, or prove, the alleged will as that of decedent under the provisions of Secs. 62-2117 and 62-2118 Ark. Stats. (1957 Supp). The trial court held that "the proponents of said will have failed to establish that the proffered instrument is the last will and testament of Robert T. Thomas, deceased" and denied its admission to probate, and we think correctly so.
The record shows that shortly after the judgment in case No. 1384 on the issue of heirship, a letter from J. W. Williams, dated December 11, 1956, mailed in North Little Rock, and addressed to "Mr. Robert Thomas and W. W. West, Wabbaseka, Arkansas," was received and opened by Jesse Bogy, operator of W. W. West Company, and was found to contain an alleged will of decedent. The will, dated December 28, 1951, was signed "R. T. Thomas", and attested by "John McCoy" and "J. W. Williams". Attesting witness, John McCoy died before the death of Robert Thomas and appellant was not able to find and produce the other attesting witness, Williams.
Appellant, therefore, attempted to establish the alleged will in the manner provided in subdivision (2) of Sec. 62-2117 above. After some unsucccessful effort to locate Williams, appellant offered the testimony of Wesley L. Withers and Levi McCoy (the son of John McCoy) who testified that John McCoy was dead and that they were present in John McCoy's store and saw Thomas sign the will and Williams and McCoy sign as witnesses. This testimony was contradicted by other witnesses and when analyzed is not convincing. On the question of the genuineness of the signature of the testator (R. T. Thomas) on the alleged will, we are convinced that the evidence shows it was a forgery, and we must affirm for this reason. While the testimony on this issue was in conflict, we find in the record enlarged photographs of the admitted signature of the decedent on a number of exhibits, and the signature on the alleged will and it is apparent to us that the signature on the alleged will is not the genuine signature of R. T. Thomas, but in fact a forgery,and accordingly we affirm this case (No. 1488).
To sum up, the judgment in Case No. 1384, as indicated, is reversed and remanded for further proceedings to determine heirship, and the judgment in No. 1488 is affirmed.
HARRIS, C. J., not participating.