John W. BROWN *v.* J. C. DANLEY,
Administrator

77-390                                        566 S.W. 2d 385

Opinion delivered May 22, 1978
(Division I)
[Rehearing denied June 26, 1978.]

*L. T. Simes II*, for appellant.

*Baker & Pittman*, by: *John Mauzy Pittman*, for appellee.

GEORGE ROSE SMITH, Justice. This appeal questions the constitutionality of our statutes and rules of evidence which create an almost unassailable presumption of legitimacy when a child is born in wedlock. The argument is that our laws deny equal protection to black persons. We find no merit in the appellant's assertions of unconstitutionality.

The appellant, John W. Brown (Jr.), is a black man who was born in Phillips county on September 19, 1937. Four and a half months earlier his mother, Inez Hall, had married John W. Brown. The appellant's birth certificate recited that his parents were John W. and Inez Brown. The elder Brown died on November 30, 1938, when the appellant was about 14 months old. The appellant was brought up by his maternal grandparents and has lived in Phillips county practically all his life.

In 1976 Henry Smiley, a black man of substantial means who had owned a liquor store in Helena, died in Phillips county. Smiley had lived with his wife, Lela, from their marriage in 1910 until Lela's death in 1965. The couple had no children. The appellee, J. C. Danley, was appointed as administrator of Smiley's estate. The appellant then filed in the probate court the petition that gives rise to this appeal. The appellant asserts that the decedent, Henry Smiley, was the appellant's natural father and that the appellant is therefore Smiley's sole heir. The petition asks that the appellant be appointed as administrator and be declared to be entitled to the entire estate.

At the trial the appellant's proof was twofold. First, several witnesses testified that Henry Smiley had sometimes said that the appellant was his son. That testimony was inferentially contradicted by other witnesses, related to or associated with Smiley, who stated that Smiley never indicated that he had any children. Second, the appellant proffered his mother's testimony that Smiley was the appellant's father and that she had not had sexual relations with her husband, John W. Brown, before the appellant's birth. The probate court held the proffered testimony to be inadmissible, under our settled rule that parents cannot bastardize a child born in wedlock by testifying to their own nonaccess to one another. *Thomas* v. *Barnett*, 228 Ark. 658, 310 S.W. 2d 248 (1958).

There is a statutory presumption that a child born during a marriage is the legitimate child of both spouses. Ark. Stat. Ann. § 61-141 (a) (Repl. 1971). That statutory presumption is buttressed by the common law presumption that a child born to a married couple is the child of the husband. The common law presumption continues until it is overcome by the clearest proof that the husband was impotent or was without access to his wife during the time the child might have been conceived. *Thomas* v. *Barnett, supra.* We have indicated, without having to decide, that the common law presumption may be weaker when the child was conceived before the marriage. *Jacobs* v. *Jacobs,* 146 Ark. 45, 225 S.W. 22 (1920).

If our presumptions and rules of evidence are valid, the

probate court's judgment was unquestionably correct. The proffered testimony of the appellant's mother was inadmissible. There is no proof either that John W. Brown (Sr.) was impotent or that he had no access to Inez Hall when their son might have been conceived.

The pivotal question, then, is whether our presumptions and rules of evidence are valid. Preliminarily, the appellant's argument presupposes the unconstitutionality of our statute which permits illegitimate children to inherit from their mothers but not from their fathers. § 61-141 (d). A similar statute was held unconstitutional in *Trimble* v. *Gordon,* 430 U.S. 762 (1977), although in that case the illegitimate child had been both acknowledged as and judicially determined to be the asserted father's daughter. We need not determine whether that factual distinction between the cases makes any difference, because we would reach the same conclusion in this case even if our statute were held to be invalid.

In attacking our presumptions and rules of evidence the appellant insists that their effect is to discriminate against him simply because he is black. This novel argument runs as follows: The legal rules make it more difficult for an illegitimate person to prove the identity of his real father. Statistics, which we need not repeat, show that about 50% of the black children born in Arkansas are illegitimate, but only about 5% of the white children are illegitimate. Hence, it is argued, the legal rules deny the appellant his right to equal protection, because they operate more severely upon blacks as a class than upon whites as a class.

It seems to us that the appellant's train of reasoning is fallacious in several particulars, but only two considerations need be mentioned to explain our inability to accept the argument.

First, even assuming that the appellant's statistics can be applied to children born in wedlock, the legal rules clearly do not result in discrimination against blacks as compared to whites. The rules do make it more difficult for a child born in wedlock to prove that he was actually illegitimate, but color has nothing to do with it. In the circumstances a black child is competing for the inheritance with the decedent's black

legitimate heirs, and a white child is competing with white legitimate heirs. The scales are evenly balanced.

Second, in addition to the fact that the challenged rules have no relation to color, they rest upon sound principles of public policy. The present case illustrates the reason for the rules. The appellant was born in 1937. His legal father died in 1938, leaving no estate as far as the record shows. Henry Smiley, a well-to-do man, died 38 years later. The appellant, in seeking to acquire Smiley's entire estate, argues that the rules *unfairly* prevent him from establishing his claim to inherit (at the expense of Smiley's other heirs).

But suppose the situation were reversed. Let the facts be the same except that it was Smiley who died with no estate in 1938 and John W. Brown died a wealthy man in 1976. If Brown's other heirs then argued that this appellant, although born in wedlock almost 40 years earlier, was in fact Smiley's illegitimate child, the State would have many reasons for creating presumptions and rules of evidence to protect the appellant's right to inherit from John W. Brown. We are not persuaded that the selfsame rules of law can be demonstrably desirable and justifiable in the one situation but unconstitutionally oppressive in the other.

Affirmed.

We agree. HARRIS, C.J., and FOGLEMAN and HOLT, JJ.