Ann LAKEY v. Daniel LAKEY

CA 86-26                                     712 S.W.2d 663

Court of Appeals of Arkansas
Division II
Opinion delivered July 2, 1986

*Wilson & Wilson*, by: *Ralph E. Wilson, Sr.*, for appellant.

*Lady, Blackman & Houston, P.A.* by: *Keith Blackman*, for appellee.

TOM GLAZE, Judge. This appeal arises out of a divorce action. The appellee, Daniel Lakey, filed for divorce from appellant, Ann Lakey, and alleged that he was not the father of a child born during the parties' marriage but conceived prior to the marriage. The chancellor held that the chancery court did not have jurisdiction because the county court has jurisdiction over bastardy matters. The chancellor, therefore, declined to adjudicate any matters relating to the child born during the marriage of the parties.

Article VII, section 28, of the Constitution of Arkansas provides in pertinent part: "The county courts shall have exclusive original jurisdiction in all matters relating to . . . bastardy." In *Rapp* v. *Kizer*, 260 Ark. 656, 543 S.W.2d 458

(1976), the Arkansas Supreme Court held that a chancellor does not have jurisdiction to set visitation rights or support payments for an illegitimate child, and stated, without limitation, that such matters were to be adjudicated in county courts, even where paternity was not in dispute. In *Stain* v. *Stain*, 286 Ark. 140, 689 S.W.2d 566 (1985), it was held that, in divorce cases, paternity of a child born prior to the marriage of the parties (but allegedly of the parties' union) was a matter for the county court, and chancery court had no jurisdiction. Later that same year, in the case of *Jarmon* v. *Brown*, 286 Ark. 455, 692 S.W.2d 618 (1985), the Court reiterated that the county court has exclusive original jurisdiction in bastardy-related cases.

This case differs from *Rapp*, in that *Rapp* did not involve a divorce but rather was an action brought by a putative father of an indisputably illegitimate child for visitation rights and support. This case also differs from *Stain* because, in that case, the child was born prior to the marriage of the parties and, in conjunction with a subsequent divorce action, the wife alleged that the husband was the father of the child and requested child support. Even though the father admitted paternity, he challenged the chancellor's jurisdiction to decide a paternity issue, and the supreme court agreed. Later in 1985, *Jarmon* was decided. It, too, differs from this case in that the child in *Jarmon* was born out-of-wedlock, the parents never married, and relief was sought by the putative father in both county and chancery courts after the mother died.

In *Brown* v. *Danley*, 263 Ark. 480, 566 S.W.2d 385 (1978), relying upon Ark. Stat. Ann. Section 61-141(a) (Repl. 1971), the Arkansas Supreme Court held that "there is a statutory presumption that a child born during a marriage is the legitimate child of both spouses." 263 Ark. at 482; *see also Thomas* v. *Barnett*, 228 Ark. 658, 310 S.W.2d 248 (1958); *West* v. *King*, 222 Ark. 809, 262 S.W.2d 897 (1953). In *Goodright* v. *Moss*, 2 Cowp. 291, 98 Eng. Rep. 1257 (1777), the long-standing common law rule, which is known as Lord Mansfield's Rule, was articulated: "[T]he declarations of a father or mother, cannot be admitted to bastardize the issue born after marriage." 98 Eng. Rep. at 1257. This rule has become an ingrained part of our common law and has long been recognized in Arkansas. *Wright* v. *Vales*, 1 Ark. App. 175, 613 S.W.2d 850 (1981); *Bankston* v.

*Prime West Corporation*, 271 Ark. 727, 601 S.W.2d 586 (Ark. App. 1981); *Spratlin* v. *Evans*, 260 Ark. 49, 538 S.W.2d 527 (1976). Further, "[t]he presumption of legitimacy of children born during the wedlock of two persons is well-grounded in common law and Arkansas statutory law." 1 Ark. App. at 177. This presumption is rebuttable only by the strongest type of. conclusive evidence such as impotency of the husband or nonaccess between the parties. *Bankston, supra.*

■  In this case, the husband alleged that he was not the father of a child to which the wife had given birth during the parties' marriage. There was no independent evidence produced by the husband in support of the allegation about which he was incompetent to testify. There was no competent, independent evidence for the chancellor to weigh and resolve on the issue of the paternity of the child. Under Lord Mansfield's Rule, neither a husband nor a wife is competent to testify in such manner as would tend to prove a child born during a marriage to be illegitimate. That being the case, and in light of the strong presumption of legitimacy of a child born during a marriage, the burden was upon appellee to prove, by strong, conclusive and competent evidence that he was not the father of the child born during the marriage. There was no such proof adduced here. Were the rule otherwise, the practical effect in a case such as this would be that a party to a divorce action could force the removal of part of the proceeding to county court upon the mere allegation that a child born of the marriage was not the parties'. This is clearly undesirable.

Reversed.

COOPER and CLONINGER, JJ., agree.