Marty Ryan LEACH v. Amy Varner LEACH

CA 96-930                                          942 S.W.2d 286

Court of Appeals of Arkansas
Division I
Opinion delivered April 30, 1997

*Jack W. Barker,* for appellant.

*Jeffery C. Rogers,* for appellee.

JOHN B. ROBBINS, Chief Judge.  In the divorce proceeding between appellant and appellee, the chancellor held that no legal relationship existed between appellant, Marty Ryan Leach, and the daughter of appellee, Amy Varner Leach.  The effect of his ruling illegitimized the firstborn child of the marriage.  The chancellor ruled that because of this finding, appellant could not be considered for custody of the child and granted custody to the natural mother, appellee.  This appeal resulted.

The record reflects that the parties were married on November 15, 1990, well into appellee's pregnancy with the child at issue.  Neither appellant nor appellee assert that appellant is the natural father; they knew she was pregnant by another man, but they married, and the child was born of the marriage in January 1991.  Appellant had his name placed on her birth certificate, and he continually represented himself as her father.  The parties agreed not to raise the issue of paternity with regard to this child.  However, appellant never legally adopted this child.  Appellee

gave birth to another child, a son, in September 1993, who was appellant's biological child. In September 1995, divorce proceedings were filed, and in a subsequent temporary relief hearing the appellant was granted temporary custody of both children and possession of the marital home. Appellee was granted visitation privileges at that time.

A final hearing was held on December 11, 1995, wherein testimony was taken from both parties. Both parties sought custody of the children. Appellant testified that he claimed the girl as his own. At the time of the hearing, she was four years old. Appellant stated that he had never alleged that anyone else was the father of this child. He knew of no paternity tests ever being conducted. Appellant's name was put on the birth certificate, and the child bears appellant's surname. Appellee testified that she and appellant had reached an agreement that appellant would be the father of the child and that they would never mention in the future that she was not his biological child.

At the conclusion of taking testimony, the chancellor brought up the issue of jurisdiction over custody of the elder child. Counsel for the parties responded that they had not intended to make paternity an issue in this case, but the chancellor said:

> My problem, my question is, whether or not this Court has the jurisdiction, [it] would be the subject matter jurisdiction, which I must raise, whether it's raised or not by the pleadings, to grant custody to Mr. Leach when the record is clear, it's undisputed, that he is not the father of this child.

After taking under advisement all issues except the granting of divorce, the chancellor issued a letter opinion which merged into the divorce decree. In it he determined that no legal relationship existed between the firstborn child and appellant, based upon the fact that "both parties agree he is not the natural father," and that although he had treated her as his own since birth, he had not adopted her and established a legal relationship. He stressed that both parties were fit parents; however, the best interests of the children dictated that they should not be separated, necessitating a conclusion that appellee be awarded custody. Appellant father was

granted visitation of both children and ordered to pay support only for his biological child.

The chancellor reasoned that Arkansas statutory law requires that custody of an illegitimate child of an *unmarried* woman must be in such woman unless a court of competent jurisdiction places custody in another. Ark. Code Ann. § 9-10-113 (Repl. 1993). Upon this statute, the chancellor felt compelled to give appellee custody of the children. However, as the emphasized terms of the statute make clear, this mandatory grant of custody is not required as to a *married* woman. We need not reach the issue of correct or incorrect application of that statute.

■ It is apparent to this court that the chancellor erroneously determined that the elder child was illegitimate, although neither party raised the issue. At issue is a child born within the bonds of marriage, and this state has always held sacred the legitimacy of children:

> Marriage is still considered an honorable institution; children born during marriage should be deemed legitimate, and legal efforts to declare such children illegitimate are not and should not be made easy. Belief in that principle is so great that we have created a legal presumption to protect it. This presumption, that a child born during marriage is the legitimate child of the parties to that marriage, is one of the strongest presumptions recognized by the law.

*Thomas v. Pacheco*, 293 Ark. 564, 567-568, 740 S.W.2d 123, 125 (1987).

■ Act 657 of 1989, codified at Ark. Code Ann. § 16-43-901 (Repl. 1993), abolished Lord Mansfield's Rule. The commonlaw rule, articulated in 1777, states the declarations of husband and wife cannot be admitted to bastardize a child born after marriage. The statute now permits a mother, her husband, and a putative father to testify about the paternity of a child. However, the strong presumption of the legitimacy of a child born of marriage continues to be one of the most powerful presumptions in Arkansas law. Only upon clear and convincing evidence may the court find this presumption overcome. This statute also provides:

The court shall consider foremost the interest of the child in making any determination hereunder and consider only testimony and evidence which will serve the best interest of the child in its findings pursuant to this section.

*Id.* at subsection (g)(2). Illegitimizing the elder child was not in her best interest, nor was it a goal of either of her parents.

■ We recognize that appellate review is performed *de novo*, and we reverse only if the decision is clearly contrary to the preponderance of the evidence. *Johns v. Johns*, 53 Ark. App. 90, 918 S.W.2d 728 (1996). Furthermore, special deference is shown to rulings regarding child custody because of the special care required and the unique opportunity to evaluate evidence and judge credibility of witnesses. *Id.* Upon the facts of this case we must reverse and remand so that the chancellor may reevaluate the evidence and witnesses with regard to the custody, visitation, and support issues. Custody and visitation should be determined solely on consideration of the best interest of the children.

Reversed and remanded.

STROUD and CRABTREE, JJ., agree.