Larry D. Vaught, Judge, dissenting. li3I dissent from the majority’s holding that Arkansas Code Annotated section 9-27-303 (40) (Repl. 2015), which defines the term “parent” as used throughout the juvenile code, allows only one man to be deemed a “parent” for each child in a dependency-neglect case. I fear that the majority’s approach-prioritizes the interests of adult defendants at the expense of the juveniles’ need for permanency.. Section 9-27-341(a)(2) states that termination may only be used in order to clear juveniles for permanent placement. Section 9-27-341(a)(3) states that it is the intent of the legislature that termination be used to provide permanency for the juvenile. In order to accomplish that goal, all outstanding rights to the child that may be claimed now or in the future must be conclusively disposed of. Section 9-27-303(40) establishes that certain persons are automatically deemed to have parental rights as a matter of law. It defines apparent” as “a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to section 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile.” Nowhere in the juvenile code or the caselaw does it state that only one man can be recognized as a parent for each child in a dependency-neglect case. While there can certainly be only one biological father, the code recognizes that there are alternative definitions of a parent and establishes five different avenues by. which a person may be legally deemed a parent. Ark. Code Ann. § 9-27-303(40). I believe the circuit court was correct in .recognizing that section 9-27-303(40) vests parental rights in anyone who meets the statutory definition of a parent and that termination is the only mechanism for extinguishing those rights. Arkansas law has long held that a child born of a marriage is legally deemed to be the legitimate child of both spouses. See R.N. v. J.M. and B.M., 347 Ark. 203, 61 S.W.3d 149 (2001); Leach v. Leach, 57 Ark. App. 155, 942 S.W.2d 286 (1997). Arkansas Code Annotated section 16-43-901 governs the admissibility, in paternity and child-custody cases, of evidence calling into question the legitimacy of a child born of the marriage. In Leach, we held that, while section 16-43-901 abolished Lord Mansfield’s Rule, which was the common-law doctrine that made declarations of a husband or wife inadmissible to bastardize a child born after marriage, “the strong presumption of the legitimacy of a child born of marriage continues to be one of the most powerful presumptions in Arkansas law.” Leach, 57 Ark. App. at 158, 942 S.W.2d at 288; See also R.N., 347 Ark. at 213, 61 S.W.3d at 155; Lakey v. Lakey, 18 Ark. App. 182, 184-85, 712 S.W.2d 663, 665 (1986) (providing in-depth analysis of the common-law and statutory roots of the presumption of legitimacy). Section 16-43-901 (Repl. 1999) codifies the presumption of legitimacy by providing that “upon a finding of the court by clear and convincing evidence that the presumption of legitimacy of a child born of a marriage has been rebutted,” the court shall relieve the putative father of further support liability, establish the biological father of the child, and set a support obligation for the child to be paid by the biological father. I mention the presumption of legitimacy for two reasons. First, the majority appears to be applying section 16-43-901 to the case at bar and interpreting the circuit court’s findings as having sufficiently rebutted the presumption of G.E.’s legitimacy. Such an approach ignores the fact that section 9-27-303(40)’s definition of a “parent” addresses a separate and distinct area of the law. Legitimacy is not the issue in a dependency-neglect case. The aim of section 9-27-303(40) is to clear a juvenile for permanent placement. As such, the definition is not framed as a rebuttable presumption but instead establishes that anyone who meets the definition is a “parent” under the juvenile code. Second, the presumption of legitimacy illustrates the legislature’s wisdom in broadly defining “parent” in section 9-27-303(40). As evidenced by the presumption, both the mother’s husband and the child’s biological father may attempt to assert parental rights to the child. Section 9-27-303(40) recognizes this fact by empowering the circuit court to conclusively address the legal rights of everyone who falls within the statutory definition of a “parent.” hfiClearly, it is factually possible that multiple individuals may simultaneously meet the statutory definition of a “parent.” For example, one man may be married to the mother at the time of the birth, while a second man acknowledges paternity and signs the birth certificate, and a third man is found by a court of competent jurisdiction to be the biological father. The majority’s approach assumes that, once the third man is found to be the biological father, such a finding will automatically divest the first two men of parental rights. This approach ignores the fact that those two men continue to meet the statutory definition of a “parent” under section 9-27-303(40). The majority has essentially invented an entirely new procedure for changing a person’s status from “parent” to “nonparent,” wholly unsanctioned by the juvenile code. The code establishes termination of parental rights, either voluntarily or involuntarily, pursuant to section 9-27-341, as the only legal mechanism for a circuit court to extinguish the legal rights of a person meeting the statutory definition of a “parent.” The facts of this case demonstrate the problem with the majority’s approach. During the pendency of this action, How-erton was presented with proof that he is not G.E.’s biological father. Statutorily, he was entitled to voluntarily relinquish his parental rights, thereby eliminating the possibility that an involuntary termination may be used against him in a future dependency-neglect case.[1] He chose not to do so. Instead, he testified that he wanted to be involved in G.E.’s life and argued that she should be placed in his mother’s care until he is released from prison. Hower-ton’s testimony makes clear that he consid-eredJjjhimself a parent and intended to assert his legal rights to G.E. Therefore, termination was necessary to extinguish the legal rights bestowed on Howerton by virtue of his marriage to G.E.’s mother and to foreclose the possibility that he might later challenge the validity of G.E.’s adoption. While such a challenge would likely prove unsuccessful, it would still serve as an impediment to permanency for G.E. Anything short of conclusive termination of Howerton’s parental rights casts a cloud of uncertainty over her future. Arkansas Code Annotated section 9-27-102 mandates that “the best interests of the children must be paramount and shall have precedence at every stage of juvenile court proceedings.” Here, termination of Howerton’s parental rights provided G.E. with a level of permanency unavailable otherwise. The majority focuses on the prejudice that Howerton might suffer in the future as a result of being subject to an involuntary termination.[2] Our legislature has made clear, however, that the parent’s best interest and the child’s best interest are not on equal footing; courts are unequivocally directed to favor the child’s best interest. Ark. Code Ann. § 9-27-102. Therefore, I would affirm the circuit court’s termination of Howerton’s parental rights as being necessary to conclusively clear G.E. for adoption and provide her with true permanency. Gruber, J., joins. . Section 9-27-341(b)(3)(B)(ix)(a)(4) states that a previous “involuntary” termination serves as grounds for a subsequent termination. . Such prejudice is easily avoided in most cases because a husband who is found not to be the biological father may simply execute a voluntary consent to termination. The majority relies on section 9-27-34 l(b)(3)(B)(ix)(a)(4) for the position that termination of a defendant’s parental rights is prejudicial because it may be used as the sole basis for termination of his rights to other children in a future case. However, section 9-27-341(b)(3)(B)(ix)(a)(4) explicitly applies only to "involuntary” terminations. Involuntary termination of parental rights need only occur where, as here, despite learning that he is not the biological father, the husband continues to assert his legal right to parent the child.